PATTERSON and another, Respondents, vs. PHILLIPS and another, Appellants.

*September 13—October 9, 1934.*

For the appellants there was a brief by *John W. Kelley* of Rhinelander and *Michael J. Dunn, Jr.,* of Milwaukee, and oral argument by *Mr. Dunn.*

For the respondents there was a brief by *O'Melia & Kaye* of Rhinelander, and oral argument by *Walter F. Kaye.*

WICKHEM, J.  Defendants' first contention is that there is no credible evidence that the defendant James Phillips was the agent of his codefendant, Anna Phillips.  The second contention of defendants is that there is no evidence to sustain the jury's finding of negligence upon the part of James Phillips.  The nature of these contentions requires an examination of the facts in some detail.

James and Anna Phillips were husband and wife.  In the year 1912 defendant Anna Phillips constructed a building for garage purposes upon property owned by her.  The defendants had their living quarters upstairs.  On the first floor they had an office and supply store, and a garage and workshop.  It is the contention of the defendants that Anna Phillips was the owner and proprietor of the garage; that she ran the business, took care of the office, sold tires, and accessories, and otherwise had supervision and control of this business, which she is alleged to have owned.  She had a mechanic, one Langendorf, who also sold gas, oil, tires, and accessories.  It is her contention that her husband was engaged in the separate business of driving a taxi until 1929, from which time on he engaged in the business of towing

wrecked cars, welding, and doing lathe work. The defendant James Phillips did all this work in the garage. He claims that he made his own arrangements for work, and kept the fees charged for his services, except that he turned over to his wife some portion of the amount taken in to pay for occupation of the garage as a workshop. On the evening before the accident, Langendorf, the mechanic, received a call to repair a car at Whitefish Lake. He told defendant James Phillips that his car had a flat tire and a low battery, and that he had to make the trip. It is claimed by appellants that Langendorf did not request Phillips to take him out but that Phillips volunteered. At any rate Phillips and Langendorf—Phillips driving—left the garage in Phillips' car. They proceeded west on Highway 70 for Whitefish Lake. Plaintiff Kellogg Patterson was driving east towards Minocqua on Highway 70 in a four-door Packard sedan. Highway 70 is a graveled state trunk highway, twenty-three and one-half feet wide at the point where the collision took place. The cars collided in the vicinity of a sharp curve. The Patterson car was driven on the inside of the curve. According to the evidence of Patterson, he approached the curve at from twenty-five to thirty miles an hour. Other evidence bases his speed at forty to fifty miles an hour. Patterson testified that before and after the collision his Packard was on the right side of the road, and that the twenty-eight inch rear door of his Packard touched a vertical dirt bank nearly five feet high which skirted the highway upon his right. Other witnesses testified that the tracks of the Packard car indicated that the car was over the center line some distance. At least one witness testified to having taken measurements indicating that Patterson was on the wrong side of the road when hit. Phillips claims to have been driving from twenty to twenty-five miles an hour as he approached the curve. He claims to have maintained his position on the right side of the highway, and to have maintained an adequate lookout.

Upon the evidence in this case the issue of negligence must be held to have been for the jury. There is not a single item that is not in dispute, and there is no item of negligence with respect to which the physical facts are so completely controlling as to nullify the conflict in the testimony. Appellants' contention must therefore be rejected.

Coming to the issue of agency, we are of the opinion that this presented a jury question. Certainly the business relationship of husband and wife in this case leads to some suspicion that their activities were not as completely separate as claimed. Upon cross-examination it was disclosed that Mrs. Phillips knew very little about the garage business. She had no knowledge of the price of tires, what kind of oil she sold, the grades of oil, the kind of gas, or the grades. She kept no checking account,—no records of any kind. She did not know what part of Mr. Phillips' income from his work she received, and it is reasonably to be inferred from the testimony that either at her request or with her acquiescence Phillips worked around the garage, sold oil, gas, and accessories, and otherwise furthered her interest as proprietor. The jury could reasonably conclude that on the occasion in question Phillips drove his car and transported the mechanic on her behalf and for the purpose of furthering her business. There is no evidence that she specifically requested this, but the whole course of dealings between the parties indicates that with her consent, whether with compensation or not does not appear, the husband did whatever appeared to be useful in promoting the interests of her business. The testimony sustains the conclusion of the jury that on the occasion in question Phillips was on his wife's business, with her acquiescence and consent, and at her implied request.

It is next contended that the damages awarded Barbara Patterson are excessive. Barbara suffered a deep laceration of the left cheek, in addition to minor bruises and contusions. She was in the hospital one night and missed two

weeks of school. It is contended that an award of $2,500 is exorbitant. It is clear that the award can only be sustained on account of the existence of a scar, which the medical testimony shows to be permanent. There would be no profit in an extensive analysis of all the cases involving this type of injury. It is our conclusion that while the award seems high, it cannot be disturbed. The scar extends from the eye to the chin, and results in a permanent facial disfigurement. We cannot say, in view of plaintiff's sex, that the award is clearly disproportionate to the injury.

It is next contended that the plaintiff Barbara Patterson assumed the risk of her father's high rate of speed. There is no evidence that this rate of speed had persisted long enough to call for her protest, assuming that a child ten years of age, riding with her father, should be held to have the same obligation to protest as an adult guest.

Another feature of this case, not mentioned in the briefs, calls for comment here. The speed of Patterson, which was the only negligence on his part found by the jury, could not have been a contributing cause of this accident. *Clark v. McCarthy,* 210 Wis. 631, 246 N. W. 326. Had there been a motion to review, we would be compelled to hold that the negligent speed of Patterson could not be the basis for a reduction of his damages. In view of this, the question of assumption of risk becomes immaterial.

Complaint is made of an instruction in which the court characterized the plaintiff Barbara's injuries as severe. This could not have been prejudicial. The injuries were concededly severe and the jury knew their precise character.

It is next contended that the court erred in failing to comply with a request of the jury to read the testimony upon a material issue. The case went to the jury at 4 o'clock on Saturday. The court called the jury into court at 7:20 p. m. and inquired as to their progress. The foreman reported that the jury had not made much progress, and said, "We

are stuck on the third question, whether this Mr. Patterson was on the wrong side of the road." The court sent the jury back to take up its work, saying: "I hope you will be as expeditious as possible. It is late and Saturday night." One juror asked whether the court could read the jury testimony as to the skidding and location of Patterson's car. The court stated that it would be difficult to locate this testimony, but that it could be done and that it would involve reviewing a considerable amount of evidence. The jury resumed deliberations and were called into court at 10:10 p. m. to ascertain its progress. The foreman then told the judge: "We haven't been able to compromise on the third question at all." (The third question related to Patterson's negligence.) The jury were sent out to resume their deliberations and were recalled at 11:30 p. m. The foreman at that time reported that all but the question of Patterson's negligence had been answered, and stated that there did not seem to be any prospect of agreement upon that question. Upon the court's statement that he would have the jury lodged for the night at the hotel, the foreman asked the court whether he could instruct further upon the third question. He said: "Would it be too much trouble to read the testimony pertaining to the skidding—skid tracks immediately behind the Packard?" The court intimated that in case the jury wanted this read, and in view of the time it would take to locate the testimony and read it, they had better be lodged for the night and resume their deliberations in the morning. At this point a juror informed the court that his wife was not well; that he had a car-load of feed coming and he would like to go home and return again that evening. The judge told him that this would invalidate the proceedings, whereupon the juror said that he would rather stay all night. The court then said: "Under those circumstances I am going to ask you to retire again and see whether you can't agree." The jury retired and brought in its verdict at 1:05 a. m.

It is the contention of the appellants that the failure to have this testimony read constituted error; that this was a vital point in establishing whether Patterson was on his right side of the road, and that the jury were evidently confused about the testimony. It is implied, although not definitely stated in the argument of appellants, that since there was disinterested testimony of measurements that would have put Patterson on the wrong side of the road, a refreshing of the recollection of the jury on this point might have resulted in a different verdict. In other words, it is claimed that the jury was not in doubt as to whom they believed, but simply could not recall the facts. The contention is ably defended, and the matter is not without difficulty. However, the trial judge must be permitted a reasonable amount of discretion in such matters, and we conclude that there was no abuse of discretion. The court did not refuse to have the testimony read. The reporter was at all times available to read it. The option to return to their deliberations without having it read was exercised by the jury. The only thing that the court could have done that was not done, would have been to insist that the jury adjourn until morning, and then have the testimony read. This failure could be held an abuse of discretion only upon the ground that the trial court should have assumed that the jury, by electing to proceed without a reading of the testimony, indicated that they did not propose to give conscientious consideration to the verdict on account of their desire to be discharged. This conclusion is obviously not valid. The reading was to have been by the request of the jury; the election not to have it read was by them. The court stood ready to serve the jury's wishes. The extended character of their deliberations indicated conscientiousness on their part. Their conclusion that they could come to a verdict without the reading indicated that while the reading would facilitate and shorten their deliberations, a verdict could be fairly reached without it. It is concluded that there was no error.

*By the Court.*—Judgment affirmed.