STATE of Wisconsin, Plaintiff-Respondent,

v.

Rick EDELBURG, Defendant-Appellant.†

Court of Appeals

*No. 85–0693–CR. Submitted on briefs January 13, 1986.—*
*Decided February 18, 1986.*
(Also reported in 384 N.W.2d 724.)

† Petition to review denied.

For the appellant there were briefs by *Margaret A. Maroney,* assistant state public defender, and *Matthew Blust,* law student intern, University of Wisconsin Law School.

For the respondent there was a brief by *Bronson C. La Follette,* attorney general, and *Sally L. Wellman,* assistant attorney general.

Before Cane, P.J., Dean and Dykman, JJ.

CANE, P.J. Rick Edelburg appeals a judgment convicting him of first degree sexual assault, in violation of sec. 940.225(1)(d), Stats. Edelburg argues that the trial court erred by refusing to allow him to testify regarding the possible bias of a witness, giving a coercive supplemental jury instruction, and violating sec. 972.12(2), Stats., by allowing the jury to separate during deliberations. Because we conclude that any errors made at trial were either harmless or waived, we affirm the conviction.

Connie Hudak and Carolyn E. took their children to Carol Renner's house one night so Renner could babysit while the other two women went out. There were five children at Renner's house that evening: Renner's two children, Hudak's two children, and J.E., Carolyn's daughter. Hudak returned to Renner's house at 2 a.m., bringing with her some people from the bar where she had been, including Edelburg.

The children were all sleeping in one of the upstairs bedrooms. Edelburg went upstairs to use the bathroom and, shortly thereafter, Renner's eight-year-old daughter came downstairs and reported that there was a man upstairs bothering the children. Hudak

went upstairs and found Edelburg sitting on the edge of the bed next to J.E. Hudak testified that when she asked what Edelburg was doing there, he replied, "I just love little girls." Hudak then asked Edelburg to leave the house immediately.

The next day, when Carolyn questioned J.E. about the incident, J.E. reported that Edelburg had fingered her bottom and licked her between the legs. Edelburg was convicted of first-degree sexual assault after a jury trial.

Edelburg argues that the trial court erred by refusing to allow him to testify that Connie Hudak had a motive to testify falsely against him. Edelburg sought to testify that he and Hudak had met at a tavern one night and that Hudak had invited him home with her. At Hudak's house they engaged in sexual relations and, sometime during the night, Edelburg realized that there were young children at the house who had been left unattended while Hudak was out at the tavern. Edelburg then reportedly told Hudak that she was a bad mother and left the house immediately.

At the trial, Hudak testified that she knew Edelburg and had seen him around at various bars but denied that she had ever invited him to her home. Later, the trial court refused to allow Edelburg to testify about the alleged prior incident between himself and Hudak. The trial court concluded that the testimony was irrelevant and that Edelburg's bias theory was highly speculative.

■

Edelburg argues that the trial court denied him the right to testify and to present a defense. We need not decide whether the trial court erred by excluding Edelburg's testimony, since we conclude that the al-

leged error was harmless. Our supreme court has recently stated with respect to harmless versus prejudicial error, whether the error is of omission or commission, "whether of constitutional proportions or not, the test should be whether there is a reasonable possibility that the error contributed to the conviction." *State v. Dyess*, 124 Wis.2d 525, 543, 370 N.W.2d 222, 231–32 (1985). The "reasonable possibility" test is substantially the same as the "reasonable probability" test adopted by the United States Supreme Court in *Strickland v. Washington*, — U.S. —, 104 S.Ct. 2052 (1984). *See Dyess*, 124 Wis.2d at 544, 370 N.W.2d at 232. The *Strickland* court stated that a reasonable probability is a probability sufficient to undermine confidence in the outcome of the case. *Strickland*, — U.S. at —, 104 S.Ct. at 2068.

The trial court concluded that Edelburg's testimony regarding his theory of Hudak's alleged bias was irrelevant and speculative. If the trial court erred in this conclusion, it does not undermine our confidence in the outcome of the case. Hudak did not claim to have directly witnessed the sexual assault. Her testimony regarding the events of that evening was substantially similar to Edelburg's own testimony.[1] Hudak's testimony regarding the children's statements the following day merely corroborated the testimony of at least two other witnesses. Under the *Dyess* standard, we are

---

[1] The major conflict in the testimony concerned a statement made by Edelburg when Hudak found him sitting on the bed next to J.E. Edelburg testified that he said, "I just like little kids," while Hudak testified that Edelburg said, "I just love little girls." Under the circumstances, we cannot conclude that the outcome in this case would be different if the jury believed Hudak testified falsely regarding the statement.

confident that even if the jury had heard and believed Edelburg's bias theory, it would not have changed the outcome of this case.

Edelburg argues that the supplemental jury instruction was coercive because it failed to inform the jury that they would not be forced to agree or that they would not be kept together until they agreed. After deliberating for five hours, the jury informed the trial court that they had reached an impasse, and requested that they be allowed to review certain testimony. The trial court denied the jury's request and gave the following supplemental instruction:

> I am going to ask the jury to go back into the jury room and based on what you have heard, the evidence that is in the case, and within the light of the Court's instructions previously given to you, to try once again on the evidence you have within your memory, within the evidence of the exhibits that you have, and then try to reach a conclusion.
>
> If you can reach a unanimous conclusion—we will set a time limit if it suits your purposes, of 10:30. If you have not, I will call you back into the courtroom for further proceedings. I believe that is the best I can do at this point.

At 10:30 p.m., the jury reported that they had made progress, but had not reached a completed verdict. The jury was then excused for the night. They were asked to return for additional deliberations at 8 a.m. rather than 9 a.m. the following morning, since one of the jurors had a business commitment later in the day.

Edelburg argues that any supplemental instruction that does not tell the jury that they will not be forced to agree or that they will not be kept together

until they agree is prejudicial and coercive. He cites *Kelley v. State,* 51 Wis.2d 641, 647, 187 N.W.2d 810, 813 (1971), *Madison v. State,* 61 Wis.2d 333, 340, 212 N.W.2d 150, 154 (1973), and *Quarles v. State,* 70 Wis.2d 87, 90, 233 N.W.2d 401, 402 (1975), asserting that these cases require a court to tell a jury that they will not be made to agree or be kept out until they do agree.

That is not the thrust of those cases. Though the "not made to agree" language is present in the cases, they focus on a different problem—the coercion of a minority number of jurors into joining the majority. That factor is not present here because the trial court asked only that the jury "try to reach a conclusion."[2]

We should not analyze the suspect instruction to determine whether it omits an affirmative statement that the jury will not be made to agree, or be kept out indefinitely. Instead, we must determine whether the jury could reasonably conclude that the judge had said or inferred that they would be kept out until they reached a verdict, no matter how long that took.

■ There is nothing in the supplementary instructions from which a reasonable jury would conclude that they were to be kept out indefinitely. The court set a 10:30 p.m. deadline before it would bring the jury back. It said "that is the best I can do at this point." If anything, the jury could have inferred that their problem of an impasse would be reviewed in a few hours, at which time the court might do something better for them.

---

[2] The supplemental instruction that the trial court gave was not a so-called "Allen instruction," which directs a juror to distrust his or her judgment if he or she finds a large majority of jurors of a different opinion. *See Allen v. United States,* 164 U.S. 492 (1896).

Edelburg argues that a juror's concern about a business commitment the next day caused a likelihood that the verdict was coerced. He contends that the judge should have told the juror that her obligation as a juror comes first. We reject this contention.

All jury trials involve the possibility of a juror agreeing to a majority viewpoint for reasons extraneous to the facts of the case. Merely telling a juror that her jury duties are primary does not assure that the juror will not agree to a verdict out of personal concerns. The trial judge could do nothing about the business commitment, nor the juror's private reaction to the commitment. No one can know whether a juror has compromised his or her oath unless the juror reveals that fact. Here, the judge did what he could—he gave an extra hour for deliberation. We conclude that there was no coercion sufficient to deny Edelburg a fair trial.

Edelburg also argues that the trial court committed reversible error by allowing the jury to separate for the night after it began deliberations, in violation of sec. 972.12(2). Allowing a jury to separate during its deliberations constitutes reversible error when the non-objecting party fails to rebut the presumption of prejudice that arises. *State v. Halmo,* 125 Wis.2d 369, 373, 371 N.W.2d 424, 426 (Ct. App. 1985). This case is distinguishable from *Halmo* because Edelburg did not object to this error at trial.

Failure to object to an error at trial generally precludes a defendant from raising the issue on appeal. *State v. Marshall,* 113 Wis.2d 643, 653, 335 N.W.2d 612, 617 (1983) (citing *Bradley v. State,* 36 Wis.2d 345, 359–59a, 153 N.W.2d 38, 44 (1967)). Edelburg argues that the waiver doctrine should not be applied in this case

because the separation of the jury implicates constitutional rights. This argument is without merit. Since the waiver doctrine applies even to the claim of a constitutional right, *Marshall,* 113 Wis.2d at 653, 335 N.W.2d at 617, we conclude that this error was waived.

*By the Court.*—Judgment affirmed.