STATE of Wisconsin, Plaintiff-Respondent,

v.

Lionel N. ANDERSON, Defendant-Appellant.†

Court of Appeals

*No. 2004AP2010–CR. Submitted on briefs August 2, 2005.
—Decided October 11, 2005.*

2005 WI App 238

(Also reported in 707 N.W.2d 159.)

† Petition to review granted 12-14-05.

On behalf of the defendant-appellant, the cause was submitted on the brief of *Harry R. Hertel* of *Hertel & Gibbs, S.C.*, of Eau Claire.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Jeffrey J. Kassel*, assistant attorney general.

Before Fine, Curley and Kessler, JJ.

¶ 1. CURLEY, J. Lionel N. Anderson appeals the judgment convicting him of first-degree sexual assault of a child, contrary to Wis. Stat. § 948.02(1) (2001–02).[1] Anderson submits that he is entitled to a new trial because the trial court declined two requests by the jury for Anderson's testimony without Anderson's knowledge or input, violating his constitutional rights, and because he claims he was entitled to have his testimony

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

reread to the jury. Alternatively, Anderson submits that because his attorney rendered ineffective assistance, he is entitled to a *Machner* hearing.[2] After reviewing the record, we conclude that because Anderson's attorney failed to object to the trial court's unilateral decision to require the jury to specify exactly which parts of Anderson's testimony it wished read back, we must review these actions under the *Strickland v. Washington*, 466 U.S. 668 (1984), ineffective assistance of counsel standard. Inasmuch as Anderson has not shown that he was prejudiced by any of his attorney's actions, we affirm.

## I. BACKGROUND.

¶ 2. Charlene Anderson, the legal guardian of nine-year-old M.L. and the wife of Anderson, called the police after she received a phone call late one night from her sister who told her that she had reason to believe that M.L. may have been sexually assaulted by Anderson. After first denying that Anderson had assaulted her, M.L. eventually revealed to Charlene that Anderson made her suck his penis when Charlene was in the hospital in February 2001. M.L. claimed that Anderson called her into the kitchen and asked her if she wanted to play with his "tail." When she answered "no," he forced her to get down on her knees next to where he was sitting, and demanded that she suck his penis. She did as she was told.

¶ 3. After hearing about the assault, Charlene confronted her husband and told him to leave. Anderson left, and traveled to Kentucky where he was arrested. He later agreed to be returned to Milwaukee. After the police were contacted, M.L. was interviewed

[2] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

by a social worker, and the entire interview was recorded on videotape. During the interview, M.L. described the sexual assault in detail. After Anderson waived his right to a preliminary hearing and changed attorneys, a number of pretrial conferences were held. The case eventually proceeded to a jury trial. At it, the State called six witnesses and the defense called three.

¶ 4. Shortly after the trial began, the State presented the video of M.L.'s interview with the social worker. Although notice of the State's intention to introduce the tape at the preliminary hearing had been sent to then-defense counsel, no notice was sent to Anderson's trial attorney that it would be introduced at trial, and neither Anderson nor his trial attorney saw the video before trial. Before the trial, the State filed a motion in limine seeking to introduce evidence concerning the effects of sexual assault through an expert witness. At trial, no objection was raised to the fact that no notice was sent to defense counsel or that the video had not been viewed by the defense. The tape was shown to the jury before M.L. testified. Anderson's attorney did not object to this procedure.

¶ 5. As anticipated, the State called an expert witness who explained the dynamics of child sexual abuse to the jury. This witness was not listed on the State's witness list. No objection was raised to her testifying because of the failure to list her as a potential witness. One of the areas discussed by the expert was the delay in reporting often seen in intra-family sexual abuse cases. During Charlene's testimony, she mentioned that after the sexual assault allegations became known, Anderson left the state and went to Kentucky. Anderson's attorney did not object to her testimony regarding Anderson's fleeing the state.

¶ 6. During the trial, the trial court, apparently in error, admitted an exhibit that neither attorney had requested. It was written by the social worker who taped M.L.'s video and summarized M.L.'s testimony on the video. This exhibit was later allowed into the jury room during deliberations.

¶ 7. After the jury had deliberated for some time, the jury alerted the bailiff that it had reached a verdict. However, before reading the verdict, the trial court advised the parties that the jury had twice requested certain testimony to be read back and that the trial court had refused to provide it unless the jury could be more specific. These communications with the jury occurred without the trial court informing or consulting with the attorneys or Anderson. According to the trial court's recollection, the jury sent a note asking to have Anderson's and M.L.'s testimonies read back. The trial court asked the jury to be more specific. The jury then sent another note informing the court that it wanted Anderson's testimony read back because it did not understand his testimony. Again, the trial court asked the jury to be more specific. Nothing more was heard from the jury until it reached a verdict. Anderson's attorney raised no objection to the trial court's actions. Anderson was convicted of the charge and sentenced to twelve years of initial confinement and six years of extended supervision. He brought a postconviction motion which was denied.

## II. ANALYSIS.

A. *Anderson's attorney was not ineffective for failing to object to the trial court's communicating with the jury without his knowledge.*

¶ 8. Anderson argues that the trial court's communications with the jurors without his input were

errors of constitutional magnitude and, as a result, he is entitled to a new trial. In support of his argument, Anderson notes that before conferring with the jurors concerning their request to hear Anderson's testimony, the trial court granted the jury's request to view M.L.'s video interview and provided a TV and VCR for the jury with which to view it. He contends that the trial court's refusal to reread his testimony denied him a fair and balanced jury deliberation and thus, the error is not harmless. Further, Anderson submits that we should have little confidence in the trial court's recollections because very little is known about the jury's requests or the trial court's responses, as the jury's questions and the trial court's answers were thrown away by the jurors, and are thus not part of the record.[3] Because Anderson has presented nothing to contradict the trial court's recollections, we accept them as being accurate.

¶ 9. It is settled law that when a trial defense lawyer does not object, the test is not whether the alleged trial court error was "harmless beyond a reasonable doubt," with the burden on the State to show this, *State v. Stuart*, 2005 WI 47, ¶ 40, 279 Wis. 2d 659, 695 N.W.2d 259 (citation omitted) (state has burden), but,

---

[3] We are disturbed by the trial court's violation of long-standing precedent forbidding the trial court from communicating with the jury without input from the parties and their counsel. We urge trial courts to either obtain a waiver from the defendants of their right to be present during any communications with the jury or to make prior arrangements with the attorneys as to where they can be located. We do not understand why the trial court elected not to confer with Anderson and the attorneys concerning the jury's requests. Given today's world of text messaging and the ubiquitous cell phone, this requirement should not pose a significant problem.

rather, whether, under an ineffective-assistance-of-counsel analysis, the *defendant* has shown prejudice under *Strickland*, 466 U.S. at 687. *See Kimmelman v. Morrison*, 477 U.S. 365, 374–75 (1986); *State v. Carprue*, 2004 WI 111, ¶¶ 49–53, 274 Wis. 2d 656, 683 N.W.2d 31.

¶ 10. The rule that objections are generally waived if not made at trial applies equally to constitutional and non-constitutional objections. *See State v. Huebner*, 2000 WI 59, ¶ 10, 235 Wis. 2d 486, 611 N.W.2d 727 ("It is a fundamental principle of appellate review that issues must be preserved at the circuit court."); *State v. Edelburg*, 129 Wis. 2d 394, 401, 384 N.W.2d 724 (Ct. App. 1986) ("The waiver doctrine applies even to the claim of a constitutional right") (citing *State v. Marshall*, 113 Wis. 2d 643, 653, 335 N.W.2d 612 (1983)).

¶ 11. A defendant claiming ineffective assistance of counsel must prove both that his or her lawyer's representation was deficient, and, as a result, the defendant suffered prejudice. *See Strickland*, 466 U.S. at 687. To prove deficient performance, the defendant must show specific acts or omissions of his attorney that fall "outside the wide range of professionally competent assistance." *Id.* at 690. To show prejudice, the defendant must demonstrate that the result of the proceeding was unreliable. *Id.* at 687. If the defendant fails on either prong—deficient performance or prejudice—his ineffective assistance of counsel claim fails. *Id.* at 697. We "strongly presume[]" counsel has rendered adequate assistance. *Id.* at 690.

¶ 12. "Whether a defendant's trial counsel provided ineffective assistance of counsel is a mixed ques-

tion of law and fact." *State v. Guerard*, 2004 WI 85, ¶ 19, 273 Wis. 2d 250, 682 N.W.2d 12 (citing *Strickland*, 466 U.S. at 698); *see State v. Franklin*, 2001 WI 104, ¶ 12, 245 Wis. 2d 582, 629 N.W.2d 289. A reviewing court will not disturb the circuit court's factual findings unless they are clearly erroneous. *Franklin*, 245 Wis. 2d 582, ¶ 12. "Whether the trial counsel's conduct was deficient and whether it was prejudicial to the defendant are questions of law reviewed by this court de novo." *Id.* Because we are satisfied from our review of the record that Anderson suffered no prejudice, we decline to examine whether his attorney's actions were deficient.

¶ 13. WISCONSIN STAT. § 805.13(1) obligates the trial court to conduct any communications with the jury on the record. Section 805.13(1), in pertinent part, reads: "STATEMENTS BY JUDGE. After the trial jury is sworn, all statements or comments by the judge to the jury or in their presence relating to the case shall be on the record." Additionally, in criminal cases, a defendant has a constitutional right to be present during any communications between the judge and the jury. *See State v. Burton*, 112 Wis. 2d 560, 565, 334 N.W.2d 263 (1983). Here, there is no question that the trial court erred. Given that Anderson's attorney did not object, we look to see if Anderson was prejudiced by the trial court's actions.[4] We conclude he was not.

---

[4] Had his attorney objected, we would then determine if the error was harmless. When such a communication occurs, the supreme court held in *State v. Burton*, 112 Wis. 2d 560, 334 N.W.2d 263 (1983):

> [C]ommunication between a judge and a jury, while the jury is deliberating, outside the courtroom and outside the presence of the defendant and defense counsel constitutes constitutional error, if the defendant has not waived the constitutional right to be

¶ 14. The trial court recollected that:

Since the last time we were on the record, I received two other requests from the jury for information which I answered unilaterally.

I gave a standard answer which I don't believe would be objectionable and, in fact, which I think is the only reasonable answer.

The jury asked for the entire testimony of Mr. Anderson and [M.L.] to be read back. My standard answer and the one that I gave the jury was because it's cumbersome to read back that amount of testimony and because it may be unnecessary, please tell us what parts, if any, you can't remember and we would be happy to provide you with that information and I urged them to rely on their collective memory. Then I received a follow-up question saying that the jury didn't understand all of Mr. Anderson's testimony and to that response — and to that question I said if there's [sic] any parts that you can't understand, list them for us and we would be able to provide you with the testimony read back on those points.[5]

present. The court must consider whether the constitutional error is harmless beyond a reasonable doubt.

*Id.* at 570 (citation omitted). Later, in *State v. Koller*, 2001 WI App 253, ¶ 62, 248 Wis. 2d 259, 635 N.W.2d 838, this court explained that when an improper communication has occurred, "[w]e examine the circumstances and substance of the communication in light of the entire trial to determine whether the error was harmless. An error is harmless if there is no reasonable possibility that the error affected the outcome of the trial." *Id.* (citations omitted). The error must be harmless beyond a reasonable doubt. *See State v. Hale*, 2005 WI 7, ¶ 60, 277 Wis. 2d 593, 691 N.W.2d 637. After our review of the record, we conclude that because there is no reasonable possibility that the error affected the outcome of the case, the error was harmless.

[5] We observe that, contrary to Anderson's claim, the trial court did not refuse to read back his testimony. Rather, the

(Footnote added.) As noted, the jury sent no additional notes before reaching a verdict.

¶ 15. After reviewing the trial transcript, we are satisfied that the trial court's communications regarding the reading back of Anderson's testimony did not prejudice Anderson. First, the State had a strong case against Anderson. The jury had the opportunity to view the video interview of M.L., in which she convincingly recounted the sexual assault. In it, M.L.'s physical description of Anderson's penis suggested that Anderson was not circumcised. Anderson admitted later that, in fact, he was not circumcised. M.L. also testified before the jury that what she said on the tape was true.

¶ 16. Other witnesses that the jury could find credible also testified for the State. Charlene Anderson told the jury about her efforts to get M.L. to finally reveal the sexual assault, and what actions she took once M.L. revealed the assault. Also corroborating M.L.'s testimony were the testimonies of two of M.L.'s young female cousins, who both claimed that months before this matter became public, M.L. had told them Anderson had been "messing" with her, and had asked them not to tell anyone. The jury also heard from the expert witness, who explained to the jury that in cases of child sexual assault by a family member, it is quite common for a child to delay reporting the assault.

¶ 17. In contrast, Anderson's defense was weak. It consisted of Anderson's rambling, and often confusing, version of the events, in which he denied having any sexual contact with M.L. Essential to Anderson's defense was the testimony of his first cousin, who claimed not to know Anderson had been arrested for sexual

---

judge asked the jurors to identify which parts they wished reread. The jurors apparently chose to rely on their collective memories.

assault when he went to Charlene Anderson's house and had, the cousin alleged, a conversation with M.L. in which M.L. had told him that "papa didn't do that," and that Charlene Anderson had whipped her until she said that Anderson sexually assaulted her.

¶ 18. In rebuttal, Charlene Anderson testified that while Anderson's cousin did come over to the house to retrieve a letter addressed to Anderson, he was never inside the house and M.L. was not home at the time of his visit. M.L. testified that she never saw or talked to the cousin after Anderson was arrested.

¶ 19. In sum, the jury could have easily found that the State presented a variety of solid witnesses, while Anderson's defense was unpersuasive and his version of the events confusing. Thus, we conclude that Anderson suffered no prejudice because there was no reasonable possibility that the error affected the trial's outcome.[6] Moreover, the jury indicated they wanted Anderson's testimony read back to them because they did not *understand* it, not that they could not remember it. Had the testimony been read back, it would not have become more understandable, and it is likely that the rereading would have hurt Anderson more than it would have helped him.

¶ 20. With regard to Anderson's argument that he had a constitutional right to have his testimony read to the jury, we note that such a request is subject to the

---

[6] Citing *Franklin v. State*, 74 Wis. 2d 717, 724, 247 N.W.2d 721 (1976), the dissent stresses that because the jury was permitted to view the victim's videotape a second time in the jury room, but was not permitted to have Anderson's testimony reread, this overemphasized testimony adverse to Anderson. Dissent, ¶¶ 1–6. This does not, however, change the fact that the State's case was strong, and Anderson's defense was weak, which convinces us that Anderson did not suffer any prejudice.

trial court's discretion. *See State v. Simplot*, 180 Wis. 2d 383, 404, 509 N.W.2d 338 (Ct. App. 1993). Here, the trial court properly exercised its discretion by requiring the jury to specify just what testimony of Anderson's they wanted read back. Thus, we are satisfied that no error occurred.

*B. Anderson's attorney was not ineffective in any other respect.*

¶ 21. Next, Anderson submits that if he is unsuccessful in obtaining a new trial because of the trial court's errors in communicating with the jury, then he is entitled to have the matter remanded for a *Machner* hearing to determine if he is entitled to a new trial because of his trial attorney's ineffectiveness. First, Anderson contends that his attorney rendered ineffective assistance when he failed to object to the introduction of M.L.'s video because he was not given formal notice required by Wis. Stat. § 908.08 that it would be introduced at trial and, in any event, it should not have been introduced before M.L.'s testimony. Further, he claims that admitting it in the manner in which it was done violated the rule promulgated in *Crawford v. Washington*, 541 U.S. 36 (2004). Second, Anderson also argues that his attorney's assistance was ineffective because no objection was lodged when the State called an expert witness who was not on the State's witness list.[7] Third, no objection was raised when the trial court admitted into evidence an exhibit neither attorney requested and the exhibit was later sent to the jury. Fourth, no objection was raised when Charlene Ander-

---

[7] In fact, Anderson's attorney did object to the State calling the expert witness on the grounds that no expert was needed. His objection was overruled.

son testified that Anderson fled the state and went to Kentucky after the sexual assault was reported to the police.[8] As noted, Anderson must prove both that his attorney's representation was deficient and that he was prejudiced by his attorney's actions.

¶ 22. Anderson complains that his attorney was ineffective for failing to object to the viewing of M.L.'s video. Although the State may not have given Anderson's attorney formal notice of the State's intention to introduce the videotape at trial, the State did give formal notice that the tape would be introduced at the preliminary hearing. Additionally, it is apparent from the record that Anderson's attorney was aware of the existence of the tape. Several pretrial conferences discussing the upcoming trial were held before the trial. The social worker who interviewed M.L. and taped the video was on the State's list of witnesses, and it is evident that Anderson's attorney was prepared to cross-examine this witness. We also note that nowhere in the record does trial counsel state that he was taken by surprise by the State's intention to show the tape to the jury or that he was unaware of the tape. Further, it is not surprising that Anderson never viewed the tape before trial because he was incarcerated. Although Anderson complains that he should have seen the tape before trial, he has not stated what important information he could have relayed to his attorney if he had

---

[8] Additionally, Anderson claims that his attorney's failure to object when the trial court advised the parties that it had answered the jury's questions without any input from Anderson or his attorney constituted ineffective assistance of counsel. Inasmuch as we have concluded that the trial court's error in doing so was harmless, we decline to further address this argument.

viewed the video before trial. Consequently, no preju-
dice has been shown because no formal notice was
given, or because Anderson did not see the video before
trial.

¶ 23. Anderson also complains that the showing
of the tape before the live testimony of M.L. was error,·
requiring his attorney to object. He is wrong. WISCONSIN
STAT. § 908.08(5) actually proscribes this procedure:

> **Videotaped statements of children.** . . . (a) If the
> court or hearing examiner admits a videotape state-
> ment under this section, the party who has offered the
> statement into evidence <u>may nonetheless call the child
> to testify immediately after the videotape statement is
> shown to the trier of fact.</u> Except as provided in par. (b),
> if that party does not call the child, the court or hearing
> examiner, upon request by any other party, shall order
> that the child be produced immediately following the
> showing of the videotape statement to the trier of fact
> for cross-examination.

(Underlining supplied.)[9] *See State v. James*, 2005 WI
App 188, 285 Wis. 2d 783, 703 N.W.2d 727.

¶ 24. Next, Anderson claims that the viewing of
the tape violated the holding in the landmark *Crawford*
case. Again, he is incorrect. The holding in *Crawford*
stands for the proposition that: "Testimonial state-
ments of witnesses absent from trial [can be] admitted
only where the declarant is unavailable, and only where

---

[9] Anderson also argues that because it was not introduced
as a "prior inconsistent statement" under WIS. STAT.
§ 908.01(4)(a)2., his attorney was ineffective. Since a specific
statutory provision lays out the introduction of the videotape,
we conclude the general rule set forth in § 908.01(4)(a)2. does
not apply.

the defendant has had a prior opportunity to cross-examine." 541 U.S. at 59 (footnote omitted). Here, the witness, M.L., who made the out-of-court statement, was in court and was cross-examined. Therefore, the holding enunciated in *Crawford* is not relevant. *See James*, 703 N.W.2d 727.

¶ 25. Anderson next complains that his attorney was ineffective when he failed to object to the State calling an expert witness not listed on the witness list. While the State never gave the name of the specific witness it intended to call, the State did file a motion in limine alerting both Anderson's attorney and the court that such a witness would be called, and in the motion, the State outlined the type of expertise that would be elicited from the witness. In our view, in doing so, the State complied with the requirement of Wis. Stat. § 971.23(1)(e) that a written summary of an expert's findings be made available to the defense. Further, while the witness's name was not on the witness list, the State complied with the intent behind the discovery statutes that the opposition not be faced with surprise witnesses at trial. Since Anderson's attorney knew an expert would be called by the State, Anderson has not satisfied his burden of showing how he suffered prejudice when his attorney failed to object to the witness on that basis.

¶ 26. Anderson's last complaint regarding the expert witness is his claim that his attorney's failure to request a psychological examination of the victim, after learning of the subject matter of the State's proposed expert witness's testimony, constituted ineffective assistance of counsel. He claims that *State v. Maday*, 179 Wis. 2d 346, 507 N.W.2d 365 (Ct. App. 1993), supports

101

his position. Under the *Maday* holding, however, Anderson would not have been entitled to an examination of the victim. *Maday* permits such an examination when:

> the state manifests an intent during its case-in-chief to present testimony of one or more experts, who have personally examined a victim of an alleged sexual assault, and will testify that the victim's behavior is consistent with the behaviors of other victims of sexual assault, a defendant may request a psychological examination of the victim. A defendant making such a request must present the court with evidence that he or she has a compelling need or reason for the psychological examinations.

*Id.* at 359–60.

¶ 27. Here, the expert witness testified that she never interviewed M.L. or viewed the videotape of M.L.'s interview. Therefore, had Anderson's attorney requested such an examination under *Maday*, it would have been denied. Consequently, Anderson suffered no prejudice for the failure to make such a request.

¶ 28. Anderson also fails to explain what prejudice he suffered by the trial court's apparent error in admitting the exhibit which summarized the social worker's video interview with M.L. Although neither side asked that it be admitted, the trial court admitted it and later allowed it into the jury room. As the State notes, the report contains no new information and merely summarizes what is on the tape. Inasmuch as the exhibit would have been admitted had either side requested it, Anderson was not harmed by its admission.

¶ 29. Finally, Anderson submits that his attorney was ineffective for failing to object to Charlene Anderson testifying that Anderson fled the state after learning that the police had been contacted concerning M.L.'s complaint. Anderson characterizes this testimony as falling under WIS. STAT. § 904.04(2) (other acts evidence), requiring a pretrial motion before it can be introduced. Again, we believe Anderson is mistaken because Anderson's evidence of flight is not other-acts evidence. *See State v. Miller*, 231 Wis. 2d 447, 462, 605 N.W 2d 567 (Ct. App. 1999). Rather, ' "flight is an admission by conduct.' " *Id.* at 460 (citation omitted). Once again, had Anderson's attorney objected to this testimony, the objection would have been overruled. Anderson's attorney cannot be faulted for failing to make a meritless objection. *See State v. Harvey*, 139 Wis. 2d 353, 380, 407 N.W.2d 235 (1987).

¶ 30. For the reasons stated, the trial court is affirmed.

*By the Court.*—Judgment and order affirmed.

¶ 31. FINE, J. (*concurring*). I join fully in the Majority opinion, and write this in response to what I see as the Dissent's glissade around controlling law.

¶ 32. As the Majority opinion points out, unobjected-to-trial-court errors are analyzed under the ineffective-assistance-of-counsel standards promulgated by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), even though those errors deprive the defendant of a constitutional right. *See Kimmelman v. Morrison*, 477 U.S. 365, 374–375 (1986); *State v. Carprue*, 2004 WI 111, ¶ 47, 274 Wis. 2d 656, 678, 683 N.W.2d 31, 42–43. Relying on a pre-*Strickland* decision, *State v. Burton*, 112 Wis. 2d 560, 334 N.W.2d 263 (1983), the Dissent con-

tends, in essence, that the *Burton* harmless-error standard should apply because the defendant never discussed with his trial lawyer whether the trial lawyer should object to what the trial court had done, and, presumably, whether to seek a mistrial. In my view, this is where the Dissent falters.

¶ 33. This appeal is not about a pre-event waiver (as it might be if the defendant's trial lawyer had told the trial court not to seek defense input if the jury had any questions), but, rather, about the trial lawyer's failure to object to what the trial court had already done. This is thus a straight ineffective-assistance-of-counsel situation, and, unlike a harmless-error analysis where the State has the burden of proof, the defendant cannot prevail unless he shows *Strickland* prejudice. He has not and, significantly, *the Dissent points to nothing in the transcript of the defendant's testimony that contradicts the Majority opinion's assessment of that testimony.*

¶ 34. The Dissent's view that the command of *Kimmelman* and *Carprue* applies in cases of constitutional error only when the defendant personally agrees to what the lawyer does, not only ignores the rule recognized by those two decisions but, also, if adopted, would gut *Strickland* and make it the rare case where it applied.

¶ 35. KESSLER, J. (*concurring in part; dissenting in part*). The record discloses no attempt by the trial court to contact the State and defense counsel when faced with obviously significant requests from the jury during its deliberations. The trial court, without consulting counsel, twice decided not to grant the jury's request to have Anderson's testimony read to the jurors unless the jurors could specify which portions of his relatively short testimony they wanted to hear. They wanted to hear it all, so they heard nothing.

104

¶ 36. Earlier in the deliberations, the trial court consulted with counsel and over defense counsel objections allowed the jurors to view a videotaped statement of one of the victims. The net effect of the trial court's later unilateral decisions was to permit the jurors to hear again only testimony unfavorable to Anderson. I believe the supreme court's decision in *Franklin v. State*, 74 Wis. 2d 717, 724, 247 N.W.2d 721 (1976), which cautions against the dangers of overemphasizing the value of a recorded statement relative to the testimony from the witness stand, and the process required for fairness when the jury requests reading of testimony explained in *Kohlhoff v. State*, 85 Wis. 2d 148, 159, 270 N.W.2d 63 (1978), require reversal and remand for a new trial. Consequently, I respectfully dissent from that portion of the Majority opinion involving the jury's requests to review Anderson's testimony, and from the Majority's conclusion that the trial court's action resulted in no error for which Anderson can obtain relief.

¶ 37. The record discloses a written request by the jury for all exhibits. Counsel were present and consulted. Anderson's counsel objected to allowing the jury to view a videotape of one victim's testimony on grounds that it unduly emphasized the statement, which was unfavorable to Anderson. The trial court determined it would send the videotape to the jury, but instructed them to view it only once. The trial court also agreed to provide the jury with all of the other exhibits that had been admitted into evidence. These events occurred at some unknown time during the afternoon when the jury began its deliberations.

¶ 38: There is no record of subsequent jury requests, nor are the notes the jury sent making those requests available. They were apparently inadvertently

destroyed.[1] However, when the jury returned its verdict on the second day of deliberations, the trial court for the first time advised counsel and Anderson that the jury had twice requested that Anderson's testimony be read. The first request the trial court described as a request that all of Anderson's testimony and one victim's testimony be read. The trial court indicated that it had responded by telling the jury that it had to specify the parts the jurors wished to hear, and that it urged the jurors to rely on their "collective memory."

¶ 39. The trial court also disclosed that the jury later made a second request to have Anderson's testimony read. The jury, as reported by the trial court, indicated this time that it "did not understand all of [defendant's] testimony." Without providing any opportunity for input from counsel, the trial court again refused to grant the request unless the jury specified what parts it did not understand. The jury was again unable to clarify its request, so it was not permitted to hear Anderson's testimony.

¶ 40. The trial court's decision to deny the jury's request to hear Anderson's testimony was especially damaging to Anderson's case because, as is apparent from the record, he had difficulty communicating. After careful review of the mere twenty-five pages of transcript, which compose Anderson's entire testimony, it is obvious why the jury had difficulty understanding portions of his testimony. Anderson, who testified he has a fourth grade education, was not an articulate witness. Several pages of the transcript involve obvious confusion between the questioner and Anderson as to dates when he became aware of certain material facts.

---

[1] Apparently these notes were left in the jury room and removed by people cleaning the room for another jury's use.

Parts of Anderson's testimony are unclear and confusing. From its reading of his testimony, the Majority concludes that Anderson was helped by *not* having the testimony repeated. I see that as a question the jury had a right to decide, but was erroneously not permitted to do so.

¶ 41. Not only was the decision to deny the jury's two requests to hear Anderson's testimony erroneously made without consulting counsel, it is particularly troubling because the trial court allowed the jury to hear a victim's testimony twice. In *Franklin*, the court explained that the risk of sending an audiotape and tape recorder to the jury room was that it would overemphasize the tape at the expense of testimony from the witness stand. 74 Wis. 2d at 724. Here, the jury was granted the opportunity to hear and view one victim's taped interview. After the jury viewed the videotape, it requested that Anderson's testimony be read to it. This request came after extensive deliberation. The second request attempted to explain *why* the jurors wanted Anderson's testimony read. However, the trial court still did not permit Anderson's testimony to be read to the jury, and it made this decision without any consultation with counsel.

¶ 42. Given the trial court's decision to allow the jury to hear one victim's testimony again, it faced an especially important decision when the jury then asked to hear Anderson's version of events again. "When, during its deliberations, a jury poses a question regarding testimony that has been presented, the jury has a right to have that testimony read to it, subject to the discretion of the trial judge to limit the reading." *Kohlhoff*, 85 Wis. 2d at 159. The trial court was faced with a matter of significance to the outcome of the deliberations, and was empowered to exercise its discretion. However, discretion in such a circumstance

cannot fairly be exercised *ex parte*. Where the trial court's discretion to limit the reading of testimony to the jury, or even to summarize the requested testimony for the jury, has been upheld, it has always been after the trial court gave both counsel the opportunity to be heard. *See id.* at 159–61 (no erroneous exercise of discretion where both counsel and defendant participated in a conference in chambers prior to court reading back testimony); *Jones v. State*, 70 Wis. 2d 41, 57, 233 N.W.2d 430 (1975) (jury in criminal case has the right to have testimony read to it by the reporter, although extent of the reading is within discretion of trial court). This is not a ministerial matter, such as a request for lunch or coffee. The jury made a legitimate request to hear certain testimony again, and the trial court had an obligation to both attempt to give counsel and Anderson an opportunity to be heard, and to provide the jury with the testimony, "subject to the discretion of the trial judge to limit the reading." *See Kohlhoff*, 85 Wis. 2d at 159. The trial court did not, under the teachings of *Kohlhoff*, have the right to completely deny the request. However, that is the effect of the trial court's actions here.

¶ 43. In response to Anderson's postconviction motion, the trial court spoke of the need to conserve the reporter's time, and the length of Anderson's testimony as justification for refusing to permit the entire testimony to be read. However, Anderson's testimony was contained in a mere twenty-five double-spaced pages. Although it had not been transcribed at the time of the request, it was evident that Anderson was the last of six witnesses to testify during one morning of trial. While the challenges of calendar management, with which this court certainly sympathizes, are well known to both the court and the bar, this was not particularly

lengthy testimony. The fact that the jury was unable to either identify specific parts of Anderson's testimony it wished to hear, or to explain more specifically to the trial court what subjects it found confusing, paints an eloquent picture of the jury's strongly felt need to simply hear the testimony again. The refusal to permit that reading in the circumstances where the jury was already allowed to view a videotape of testimony adverse to Anderson was, in my opinion, an erroneous exercise of discretion.

¶ 44. The Majority concedes that the trial court's decision to communicate with the jury without consulting the parties was erroneous. The Majority does not discuss this in terms of the constitutional right of Anderson to be present during all court proceedings. As the supreme court instructed in *State v. Burton,* 112 Wis. 2d 560, 570, 334 N.W.2d 263 (1983),

> [C]ommunication between a judge and a jury, while the jury is deliberating, outside the courtroom and outside the presence of the defendant and defense counsel constitutes constitutional error, if the defendant has not waived the constitutional right to be present. The court must consider whether the constitutional error is harmless beyond a reasonable doubt.

¶ 45. Instead, the Majority implies that Anderson (not his counsel) knowingly waived a constitutionally protected right because his counsel failed to object to the trial court's actions when counsel learned of them long after the fact, and after the jury had reached its verdict. The "waiver" is then analyzed in the context of ineffective assistance of counsel, as to which the Majority concludes that there was no showing that Anderson was prejudiced. I cannot agree.

¶ 46. There is nothing in the record to suggest that Anderson ever had an opportunity to discuss the trial

court's action with his counsel before the verdict was read. There is no evidence that the constitutional right to be present at all stages of the trial was ever knowingly and voluntarily waived by Anderson. There was no court colloquy with Anderson on the subject of his right to be present, nor was there any affirmative representation by his counsel that the right had been discussed and was intentionally being waived. Because the right to be present is of a constitutional magnitude, I do not understand it to be a right that can be waived by an agent (counsel) without a showing by the State that the waiver, or the delegation of the right to make the waiver, was knowingly and voluntarily made by Anderson.

¶ 47. Finally, the Majority concludes that there was so much evidence against Anderson that he was not prejudiced by the trial court's actions. I disagree with that conclusion. As explained above, this jury twice indicated a strong desire to hear Anderson's testimony again—this request should have been carefully considered and, in my opinion, granted. It is not reasonable to conclude that "the error complained of did not contribute to the verdict obtained." *See State v. Hale*, 2005 WI 7, ¶ 60, 277 Wis. 2d 593, 691 N.W.2d 637 (citation omitted). Because we cannot know what brought about the jury's ultimate decision, but because we do know that it was twice denied testimony it considered important—testimony that was favorable to Anderson —Anderson is entitled to a new trial.

¶ 48. For all the foregoing reasons, I respectfully dissent from the parts of the Majority opinion involving the trial court's contact with the jury outside the presence of Anderson and counsel.