STATE of Wisconsin,
Plaintiff-Respondent,

v.

Lionel N. ANDERSON,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 2004AP2010–CR. Oral argument April 27, 2006.
—Decided June 29, 2006.*

2006 WI 77

(Also reported in 717 N.W.2d 74.)

674

675

676

680

682

For the defendant-appellant-petitioner, there were briefs by *Harry R. Hertel* and *Hertel & Gibbs, S.C.,* Eau Claire, and oral argument by *Harry R. Hertel.*

For the plaintiff-respondent, the cause was argued by *Jeffrey J. Kassel,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. This is a review of a published opinion of the court of appeals[1] affirming the judgment of conviction of defendant Lionel N. Anderson for first-degree sexual assault of a child in violation of Wis. Stat. § 948.02(1) (2003–04)[2] by the circuit court for Milwaukee county, Richard J. Sankovitz, Judge.

¶ 2. Two issues are presented:

I. Did the circuit court err—

(A) by allowing the jury to see and hear the victim's videotaped interview in the jury room during deliberations rather than on the record in open court;

---

[1] *State v. Anderson,* 2005 WI App 238, 288 Wis. 2d 83, 707 N.W.2d 159.

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated.

(B) by communicating with the jury during its deliberations outside the presence of the defendant and without notice to or consultation with the defendant;

(C) by communicating with the jury outside the presence of defense counsel and without notice to or consultation with defense counsel;

(D) by failing to make or preserve a record of its statements or comments to the jury relating to the case; and

(E) by refusing the jury's requests to have the defendant's and the victim's in-court testimony read to it while allowing the jury during deliberation to see and hear the victim's videotaped interview?

II. If so, were any of the errors prejudicial?

¶ 3. We conclude that the circuit court committed error in each respect and the defendant was prejudiced. Accordingly, the decision of the court of appeals is reversed, the judgment of conviction vacated, and the matter remanded to the circuit court for a new trial.

I

¶ 4. The relevant facts are not disputed. This case arises out of alleged sexual assaults the defendant committed against then-eight-year-old M.L. The defendant's wife is the legal guardian of M.L. Some time after the assault, the victim apparently told two cousins of the incidents. Some time later, the sister of the defendant's wife informed the defendant's wife of the incidents. When the defendant's wife confronted the victim, the victim initially denied the incidents but later said they had occurred. The assaults allegedly occurred in February or March 2001, and the defendant's wife

informed the police of the assaults some time later. The specific allegations of sexual assault and the chain of events leading up to the defendant's arrest are not relevant to the matter before the court, so we do not discuss them in detail.

¶ 5. After the allegations were made, the victim was interviewed by a social worker and the entire interview was recorded on videotape. In the interview, the victim described the alleged sexual assault in detail.

¶ 6. At the jury trial, the State called six witnesses: the victim, the two cousins to whom she had described the assault, the defendant's wife, the social worker who had interviewed the victim, and an expert on delayed disclosure of sexual abuse who had not spoken to the victim.

¶ 7. Prior to the victim's taking the witness stand at trial, the State showed the jury in open court the victim's videotaped interview, without defense objection. The victim's direct testimony was presented at trial primarily through the victim's videotaped interview with a social worker.

¶ 8. When the victim testified on direct examination, she did not recite the allegations stated in the videotaped interview. Rather, her testimony on direct examination was brief; she reaffirmed the truth of the allegations made in the video. The victim was subject to cross-examination, minimal redirect examination, and re-cross-examination at which time she repeated the allegations in the videotape.

¶ 9. The defense called three witnesses: the defendant (who denied having engaged in sexual contact), his cousin who testified that the victim told him that the sexual assault never occurred, and the police officer who interviewed the defendant's wife when she and the victim reported the sexual assault.

¶ 10. The jury retired for deliberations on the afternoon of the second day of trial. Deliberations continued the next day. During deliberations, the jury requested in writing that all trial exhibits, including the victim's videotaped interview, be sent to the jury room and that a television and VCR be provided so that the jurors could watch the victim's videotaped interview. The jury's note is in the record. The jury was brought into the courtroom, and the circuit court's response to the jury's request was made on the record. Defense counsel objected to sending any of the exhibits into the jury room.

¶ 11. The circuit court granted the jury's request over the objections of defense counsel. In the presence of counsel and the defendant, however, the court stated that it was "going to instruct" the bailiff to instruct the jury to view the videotape only once; that it may stop the videotape at any time; and that it may not rewind or re-watch any part of the videotape. The actual instructions the circuit court gave the bailiff and the bailiff gave the jury are not in the record.[3] Thus the jury's viewing of the victim's videotaped interview during deliberations occurred in the jury room, outside the presence of the defendant, defense counsel and the State's counsel, the circuit court judge, and the bailiff. No independent record was made of the replay proceedings.

¶ 12. During deliberations, the jury requested Exhibit 8, a police report that had not been received in evidence. The circuit court apparently discussed this

---

[3] It is unclear from the record whether the circuit court separately instructed the bailiff of the limits on the jury's watching the videotape or whether the circuit court intended to have the bailiff rely on its statement to counsel and the defendant.

request with counsel and the jury was advised that the exhibit had not been received into evidence. The record is silent whether the defendant was present during this discussion. The jury's note and the circuit court's response are in the record.

¶ 13. Once again during deliberations, the jury sent a note to the circuit court requesting evidence. This time the jury asked the circuit court to read the defendant's and the victim's in-court testimony to the jury. The circuit court, without consulting the State's counsel, the defendant, or defense counsel, apparently sent a note back to the jury stating that it would be "cumbersome" to read the entire testimony to the jury, and that the jury should be more specific about what it wanted to hear.

¶ 14. In response to the circuit court's note, the jury apparently sent yet another note to the circuit court, stating that it did not understand the defendant's testimony. In response to this note from the jury, the circuit court apparently sent another note to the jury, asking the jury to explain which parts of the defendant's testimony it did not understand so that those parts could be read to the jury. The jury apparently never responded to the circuit court's note. None of these last four notes (two from the jury and two from the circuit court) is in the record.

¶ 15. After the jury reached its verdict, but before the verdict was read, the circuit court advised the State's counsel, the defendant, and defense counsel in open court and on the record of the jury's communications with it and its "unilateral" response and reconstructed from memory its ex parte communications with the jury.

¶ 16. In its summary of what had transpired, the circuit court explained that it denied the jury's first

request to read back all of the testimony, giving the jury the circuit court's "standard answer which I don't believe would be objectionable and, in fact, which I think is the only reasonable answer."

¶ 17. The circuit court explained that in its view, "it was cumbersome" to read back that amount of testimony, that "it may be unnecessary" to read back the testimony, and that the jury should advise the circuit court what parts of the testimony it could not remember.

¶ 18. As the circuit court explained, the jury followed up its question with another note stating that "the jury didn't understand all of [the defendant's] testimony." According to the circuit court, it responded to this note from the jury, stating that if there were any parts of the testimony that the jury didn't understand, the jury should list those parts and the circuit court would read back those parts to the jury.

¶ 19. The only record of the communications is the circuit court's oral rendition of the notes. The circuit court's responses to the jury took place without any input from or opportunity for the defendant or both counsel to be heard. The circuit court's description of its unilateral communications is as follows:

> Since the last time we were on the record, I received two other requests from the jury for information which I answered unilaterally.
>
> I gave a standard answer which I don't believe would be objectionable and, in fact, which I think is the only reasonable answer.
>
> The jury asked for the entire testimony of [the defendant] and [the victim] to be read back. My standard answer and the one that I gave the jury was because it's cumbersome to read back that amount of

testimony and because it may be unnecessary, please tell us what parts, if any, you can't remember and we would be happy to provide you with that information and I urged them to rely on their collective memory. Then I received a follow-up question saying that the jury didn't understand all of [the defendant's] testimony and to that response—and to that question I said if there's any parts that you can't understand, list them for us and we would be able to provide you with the testimony read back on those points.

Those questions were provided to the jury. I assume that when [the] bailiffs bring the jury down that they'll bring those written questions and answers to be included in the file.

¶ 20. The circuit court asked both counsel whether anything needed to be placed in the record. Both counsel responded, "No." After the circuit court made the statement set forth above, neither the State's counsel nor the defendant nor defense counsel objected to the circuit court's ex parte communications with the jury or to the circuit court's failure to read to the jury the victim's or defendant's testimony, even though the jury had the opportunity during deliberations to view the victim's videotaped interview.

¶ 21. After the circuit court made the statement set forth above and no objections were made, the jury was brought into the courtroom, and the circuit court requested that the jury provide the circuit court with the four notes. The jury foreperson informed the circuit court that the notes had been thrown away in the jury room. The circuit court went on to read the verdict. Apparently no effort was made by anyone to retrieve the notes; the notes are not in the record. This court

therefore does not know the precise language of these written communications between the circuit court and the jury.

¶ 22.　The jury found the defendant guilty of the charge, and the circuit court sentenced him to an 18–year bifurcated sentence, 12 years of initial confinement and 6 years of extended supervision. The defendant moved for postconviction relief on several grounds including ineffective assistance of counsel. The circuit court rejected the defendant's ineffective assistance of counsel claims without a hearing.

## II

¶ 23.　We now consider the alleged errors of the circuit court in turn. First, we examine the circuit court's decision to allow the jury to hear and see the victim's videotaped interview during deliberations in the jury room rather than on the record in open court. Second, we examine the circuit court's ex parte communications with the jury during deliberations outside the presence of the defendant and without notice to or consultation with the defendant. Third, we examine the circuit court's ex parte communications with the jury during deliberations outside the presence of defense counsel and without notice to or consultation with defense counsel. Fourth, we examine the circuit court's failure to make or preserve a record of its statements or comments to the jury relating to the case. Fifth and finally, we examine the circuit court's refusing the jury's requests during deliberations to have the victim's and the defendant's testimony read to it while allowing the jury during deliberations to see and hear the victim's videotaped interview.

### A

¶ 24. We first examine the circuit court's decision to allow the victim's videotaped interview to be shown in the jury room during deliberations rather than on the record in open court.

¶ 25. The defendant objected to the jury's seeing and hearing the victim's videotaped interview during deliberations. The defendant also asserts in this court that the circuit court erred in allowing the jury to view the videotape in the jury room rather than in open court. The State argues that the defendant did not preserve the challenge to the videotape's being presented in the jury room rather than in open court. We reach both issues, namely whether the jury should have been permitted to see and hear the videotape and where such a viewing should take place.

■

¶ 26. If an error was not properly preserved in the circuit court, this court may consider the alleged error on review when the error raises a question of sufficient public interest to merit a decision on appeal and the error raises a question of law that has been briefed by both sides and does not involve any questions of fact.[4]

■

¶ 27. Whether an exhibit should be sent to the jury room during deliberations is a discretionary decision for the circuit court.[5] Factors that a circuit court considers in determining whether an exhibit should be

---

[4] *Wirth v. Ehly,* 93 Wis. 2d 433, 443–44, 287 N.W.2d 140 (1980) (superceded on other grounds by Wis. Stat. § 895.52).

[5] *Shoemaker v. Marc's Big Boy,* 51 Wis. 2d 611, 619, 187 N.W.2d 815 (1971) (citing *Bash v. Employers Mut. Liability Ins. Co.,* 38 Wis. 2d 440, 157 N.W.2d 634 (1968)).

sent into the jury room include "whether the exhibit will aid the jury in proper consideration of the case, whether a party will be unduly prejudiced by submission of the exhibit, and whether the exhibit could be subjected to improper use by the jury."[6] A circuit court's error in sending an exhibit to the jury room during deliberations is subject to a harmless error test.[7] The State, the beneficiary of any such error in the present case, has the burden to persuade this court that the circuit court's error is harmless.[8]

¶ 28. This court reviews a circuit court's discretionary decision to determine whether the circuit court erroneously exercised its discretion. A circuit court erroneously exercises its discretion when it fails to exercise its discretion, when the facts do not support the circuit court's decision, when the circuit court applies the wrong legal standard, or when the circuit court fails to use a demonstrated rational process to reach a reasonable conclusion.[9]

¶ 29. We conclude that the circuit court properly exercised its discretion in allowing the jury to hear and see the victim's videotaped interview but failed to apply

---

[6] *State v. Jensen,* 147 Wis. 2d 240, 260, 432 N.W.2d 913 (1988).

[7] *Jensen,* 147 Wis. 2d at 262.

[8] *State v. Sullivan,* 216 Wis. 2d 768, 792, 576 N.W.2d 30 (1998) ("The burden of proving no prejudice is on the beneficiary of the error.").

[9] *Martindale v. Ripp,* 2001 WI 113, ¶ 45, 246 Wis. 2d 67, 629 N.W.2d 698; *Morden v. Cont'l AG,* 2000 WI 51, ¶ 81, 235 Wis. 2d 325, 611 N.W.2d 659; *Oostburg State Bank v. United Sav. & Loan Ass'n,* 130 Wis. 2d 4, 11–12, 386 N.W.2d 53 (1986).

the correct legal standard in the instant case when it allowed the jury to view the videotape in the jury room.

■

¶ 30. This court has set forth the procedure a circuit court should use when it exercises its discretion to allow a jury to replay a recording during deliberations: The jury should return to the courtroom and the recording should be played for the jury in open court. This procedure minimizes the risk of breakage or erasure of the recording and, more importantly, allows a circuit court to guide the jury, with the assistance of all counsel, so that no part of the recording is overemphasized relative to the testimony given from the witness stand.

¶ 31. By playing the recording in open court during jury deliberations, the circuit court can guarantee that the jury does not play the recording multiple times and may instruct the jury as necessary to minimize the risk of overemphasis. For example, the circuit court might remind the jury, in open court, that it should not unduly emphasize the recording over in-court testimony of witnesses or over other evidence.

¶ 32. In *Franklin v. State,* 74 Wis. 2d 717, 724–25, 247 N.W.2d 721 (1976), the court explained the reasons for playing an audiotape for the jury in the courtroom during its deliberations as follows:

> We cannot approve of this practice which entails the risk of breakage or accidental erasure of the tape while it is beyond the trial court's supervision and which presents the danger of overemphasis of the confession relative to testimony given from the witness stand. We are of the opinion that the proper practice and procedure is that the trial court retain control of the jury's exposure to confessions. If during the course of its deliberations the jury requests to hear a recorded confession replayed or a written confession reread, it is

within the trial court's discretion to grant such request. The jury should then return to the courtroom, and the confession should be read to or played for the jury there.[10]

¶ 33. Although the *Franklin* case involved an audiotaped interview with the accused, the procedure set forth in that case applies just as forcefully to a victim's videotaped interview. The same considerations are present in both instances. The State acknowledges that there may be benefits to playing the videotape in open court during jury deliberations.[11]

¶ 34. We conclude that the circuit court failed to adhere to the procedure set forth in the *Franklin* decision and therefore erred in allowing the jury to see and hear the videotape in the jury room during deliberations rather than in open court on the record.

---

[10] (Citations omitted). In *Franklin v. State,* 74 Wis. 2d 717, 247 N.W.2d 721 (1976), the court relied on *State v. Payne,* 199 Wis. 615, 227 N.W. 258 (1929). In *Payne,* this court created a per se rule that stenographic notes of a confession, or a written confession, could not be taken into the jury room based on concern that the jury might overemphasize the confession. In *Jensen,* 147 Wis. 2d at 259–60, which was decided after the *Franklin* case, we overruled the per se rule, concluding that allowing a written confession in the jury room, just like allowing any other exhibit in the jury room, was within the discretion of the circuit court.

*Jensen* did not affect our holding in *Franklin* relating to the procedure to be used to give an audiotape to a jury during deliberations, and *Jensen* retained the concerns expressed in *Payne* and *Franklin* of the danger of overemphasizing any evidence. Had the court intended *Jensen* to overrule *Franklin,* it would have said so.

[11] The State's brief asserts that courts in other jurisdictions are evenly divided on whether the replay of a videotape must be done in open court or may be done in the jury room.

## B

¶ 35. The circuit court's alleged second error is its communications with the jury during deliberations outside the presence of the defendant and without notice to or consultation with the defendant.

¶ 36. The parties agree with the court of appeals that the circuit court's communications with the jury outside the presence of the defendant is error, violating the defendant's constitutional and statutory right to be present. We agree with the parties.

¶ 37. An accused has both a constitutional and statutory right to be present at the criminal trial. The interpretation and application of a constitutional provision and a statute are questions of law that we determine independently of the circuit court or court of appeals but benefiting from their analyses.[12]

¶ 38. An accused's constitutional right to be present derives from the right to be heard and confront witnesses and from the accused's right to due process.[13] The constitutional right to be heard and confront

---

[12] *State v. Andrews,* 201 Wis. 2d 383, 389, 549 N.W.2d 210 (1996); *State ex rel. Sielen v. Circuit Court for Milwaukee County,* 176 Wis. 2d 101, 106, 499 N.W.2d 657 (1993).

[13] *United States v. Gagnon,* 470 U.S. 522, 526 (1985) (per curiam) ("The constitutional right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment, but we have recognized that this right is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him." (citation omitted)).

witnesses appears in the Sixth[14] and Fourteenth[15] Amendments to the United States Constitution and Article I, Section 7 of the Wisconsin Constitution.[16]

¶ 39. The United States Supreme Court stated in *Illinois v. Allen,* 397 U.S. 337, 338 (1970), that "[o]ne of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial."

¶ 40. An accused's Wisconsin constitutional right to be present at the criminal trial was interpreted in *State v. Burton,* 112 Wis. 2d 560, 334 N.W.2d 263 (1983),

---

[14] The Sixth Amendment to the United States Constitution states:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defence.

[15] The Fourteenth Amendment to the United States Constitution is relevant here because the defendant's Sixth Amendment rights are applied to the States through incorporation in the due process clause of the Fourteenth Amendment. *See Gideon v. Wainwright,* 372 U.S. 335, 342–45 (1963).

[16] Article I, Section 7, which provides for the "Rights of the Accused," states:

> In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his behalf; and in prosecutions by indictment, or information, to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed; which county or district shall have been previously ascertained by law.

to mean that a "criminal defendant is entitled to be present at his trial and to have counsel at every stage where he needs aid in dealing with legal problems."[17]

¶ 41. An accused's statutory right to be present at the criminal trial derives from Wis. Stat. § 971.04. In relevant parts, § 971.04 states that "the defendant shall be present: . . . [a]t trial . . . ."

¶ 42. A trial runs from the commencement of jury selection through the final discharge of the jury and at any time an action is taken affecting the accused.[18] *Williams v. State,* 40 Wis. 2d 154, 160, 161 N.W.2d 218 (1968). In other words, according to *Williams,* an accused has a right to be present whenever any substantive step is taken in the case:

> The trial . . . is generally conceived as running from the commencement of the selection of the jury through the rendering of the verdict and the final discharge of the jury, though some statements of the right to be present speak of it as running from the finding of the indictment, or from arraignment, to final judgment. During this period, defendant has a right to be personally present when anything is done affecting him, or, as it is sometimes put, whenever *any substantive step* is taken by the court in his case.[19]

---

[17] *State v. Burton,* 112 Wis. 2d 560, 565, 334 N.W.2d 263 (1983).

[18] In *Williams v. State,* 40 Wis. 2d 154, 160, 161 N.W.2d 218 (1968), the court cites a discussion in American Jurisprudence 2d, *Criminal Law,* regarding an accused's constitutional right to be present. The *Williams* opinion is not specific about whether it is addressing a constitutional right or a statutory right.

[19] *Williams,* 40 Wis. 2d at 160 (quoting 21 Am. Jur. 2d *Criminal Law* § 288, at 318) (quotation marks omitted; emphasis added).

¶ 43. A substantive step in a trial for which an accused has a right to be present includes the circuit court's communications with the jury during deliberations.[20]

¶ 44. *State v. Burton,* 112 Wis. 2d 560, 334 N.W.2d 263 (1983), is the modern foundation for an accused's constitutional right to be present for a circuit court's communications with the jury during deliberations. The *Burton* court explained that any such communication to the jury requires the presence of the accused and defense counsel so that they may observe the judge's demeanor, facial expressions, and tone of voice and object to any statements or request curative statements as necessary. The *Burton* court stated:

> [W]e do not condone the practice of a judge entering the jury room or communicating with a jury outside of the presence of the defendant and of counsel for the defendant both and the state, even when the judge scrupulously takes a court reporter with him or her to the jury room to record the comments. The judge is a figure of authority and respect during the trial; his or her intrusions into the sanctity of jury deliberations may affect those deliberations. Even a transcript of the judge's communication cannot reveal a judge's facial

[20] *See Burton,* 112 Wis. 2d at 565 (error to exclude defendant from communications with jury); *see also State v. Koller,* 2001 WI App 253, ¶ 62, 248 Wis. 2d 259, 635 N.W.2d 838 (same); *State v. Peterson,* 220 Wis. 2d 474, 487–88, 584 N.W.2d 144 (Ct. App. 1998) (same); *State v. David J.K.,* 190 Wis. 2d 726, 739, 528 N.W.2d 434 (Ct. App. 1994) (same); *State v. McMahon,* 186 Wis. 2d 68, 87–88, 519 N.W.2d 621 (Ct. App. 1994) (same); *State v. Bjerkaas,* 163 Wis. 2d 949, 957, 472 N.W.2d 615 (Ct. App. 1991) (same). *Cf. May v. State,* 97 Wis. 2d 175, 187, 293 N.W.2d 478 (1980) (defendant's absence for communication between judge and jury regarding questions of law does not violate § 971.04).

expressions or tone of voice. Defense counsel and defendant must be present to have the opportunity to observe the judge's demeanor first-hand, to object to statements or request curative statements in the event that the communication may be improper in any way.[21]

¶ 45. In *Burton* the court made clear that it will not reverse a conviction when a circuit court communicates with the jury outside the presence of an accused when the error was harmless. The burden of persuasion is on the State, the beneficiary of the error, to prove that the error was harmless.[22]

[S]ituations will inevitably arise in which the communication is so innocuous that it cannot be said that the error in any way influenced the jury's verdict. When these situations arose the court [in earlier cases] properly was unwilling to require that the defendant be granted a new trial. . . . The court must consider whether the constitutional error is harmless beyond a reasonable doubt.[23]

---

[21] *Burton,* 112 Wis. 2d at 569.

[22] *Id.* at 570.

[23] *Id.* (applying harmless error regarding circuit court communications with the jury in the absence of defendant and defense counsel).

In some pre-*Burton* cases addressing circuit court ex parte communications with the jury, the court applied a per se rule requiring reversal of a conviction. *See, e.g., Havenor v. State,* 125 Wis. 444, 445–48, 104 N.W. 116 (1905). The *Burton* court explicitly rejected this per se rule. *Burton,* 112 Wis. 2d at 570.

In other pre-*Burton* cases, the court did not require per se reversal when the court had communications with the jury outside the presence of the accused and the accused's counsel and applied a harmless error analysis. For a discussion of these cases, see *Burton,* 112 Wis. 2d at 566–69.

¶ 46. In the present case neither the defendant nor defense counsel objected at trial to the defendant's absence or affirmatively waived the defendant's right to be present when the circuit court communicated with the jury outside the defendant's presence. The State asserts that by not objecting at trial to the defendant's absence, defense counsel did not preserve the challenge to the circuit court's communications with the jury outside the defendant's presence.[24] Preservation of an objection takes on importance in the present case because the parties dispute whether a challenge to the alleged error should be reviewed as a direct claim of circuit court error or as a claim of ineffective assistance of counsel.

¶ 47. The court of appeals concluded that because defense counsel did not object to the circuit court's communications outside the defendant's and defense

---

[24] For some proceedings, the defendant's presence is mandatory. *See, e.g., State v. Koopmans,* 210 Wis. 2d 670, 675, 563 N.W.2d 528 (1997) (defendant cannot waive right to be present for sentencing).

*See State v. McMahon,* 186 Wis. 2d 68, 86–87, 519 N.W.2d 621 (Ct. App. 1994) (citing *Burton,* 112 Wis. 2d at 565) (defense counsel could affirmatively waive an accused's right to be present at a conference relating to a jury request for the rereading of the information).

The State argues that a jury can be ordered to deliberate further any time until the verdict is accepted by the court. *See State v. Knight,* 143 Wis. 2d 408, 416–17, 421 N.W.2d 847 (1988). Thus, the State contends that had the defendant objected to the communications after the circuit court announced its ex parte communications, the circuit court might have sustained the objection and allowed argument as to whether to read back the testimony. The argument might have convinced the circuit court to read the testimony to the jury and order the jury to continue deliberations. Thus, argues the State, the defendant did not preserve his objection to the ex parte communications.

counsel's presence, the claim should be analyzed in an ineffective assistance of counsel framework.[25]

¶ 48. The significant difference between review of a direct claim of circuit court error and a review of a claim of ineffective assistance of counsel is that in the former review, the State (the beneficiary of the alleged error) has the burden of persuasion that no error occurred or that any error is harmless. In a review of a claim of ineffective assistance of counsel, the accused has the burden of persuasion that defense counsel's performance was deficient and prejudicial.[26]

¶ 49. We have not previously addressed the question whether an accused's failure to object to the circuit court's communicating with the jury outside the accused's presence constitutes a waiver of the accused's objection. This court and the court of appeals have, however, typically considered an accused's challenge on appellate review to a circuit court's communications with a jury during jury deliberations outside the presence of the accused (even when the accused and accused's counsel have failed to object to the accused's absence) as review of a direct claim of circuit court error rather than as a claim of ineffective assistance of counsel.

¶ 50. This court and the court of appeals have on several occasions addressed an accused's challenge to a circuit court's ex parte communication with a jury outside the presence of the accused when no objection was made at trial. In four cases, the accused's challenge

[25] *State v. Anderson,* 2005 WI App 238, ¶ 13, 288 Wis. 2d 83, 707 N.W.2d 159.

[26] *Strickland v. Washington,* 466 U.S. 668, 695 (1984); *State v. Sullivan,* 216 Wis. 2d 768, 792, 576 N.W.2d 30 (1998).

to the communications made in his absence was treated by the court as a direct challenge, rather than as a claim of ineffective assistance of counsel even though no objection was made at trial to the defendant's absence.

¶ 51. In *State v. Burton,* 112 Wis. 2d 560, 334 N.W.2d 263 (1983), the court considered a constitutional challenge to the circuit court's communications with the jury during deliberations outside the presence of the accused. During jury deliberations, the circuit court judge twice entered the jury room and spoke with the jury regarding the status of the deliberations and other matters not directly related to the substantive aspects of the case. Unlike the instant case, the circuit court judge in *Burton* had a court reporter record the communications with the jury.[27]

¶ 52. Defense counsel in *Burton* never objected to the circuit court's ex parte communications with the jury during the trial. The accused's only objection to the ex parte communication was by a motion for post-conviction relief.[28] The accused's brief in *Burton* indicates, however, that defense counsel was not made aware of the communications until after the trial was completed.[29] We analyzed the accused's challenge to the communications being conducted outside his presence as a direct challenge to the alleged error, not as a claim for ineffective assistance of counsel.

¶ 53. In *State v. Bjerkaas,* 163 Wis. 2d 949, 472 N.W.2d 615 (Ct. App. 1991), the court of appeals addressed a constitutional challenge to the circuit court's communications with the jury during deliberations. During deliberations, the jury sent the circuit court a

[27] *Burton,* 112 Wis. 2d at 563.

[28] *Id.* at 564.

[29] *Id.* ·

note asking if entrapment was an issue to be considered in the case. The circuit court responded with a one-word note: "No."[30] This communication occurred without consultation with the accused, accused's counsel, or the State's counsel. Nothing in the court of appeals decision or the briefs evidences an objection by the accused or accused's counsel at trial. Nonetheless, the court of appeals did not address the case as a claim of ineffective assistance of counsel. The burden was on the State to prove the error harmless.

¶ 54. In *State v. McMahon*, 186 Wis. 2d 68, 519 N.W.2d 621 (Ct. App. 1994), the court of appeals addressed a circuit court's communications with the jury during deliberations outside the presence of the accused. The circuit court conducted six conferences with the jury during jury deliberations outside the presence of the accused, but with the State's counsel and defense counsel present. In the first five conferences with the jury, neither the accused nor defense counsel objected on the record to the conference being held in the accused's absence or affirmatively waived on the record the accused's right to be present. On the sixth occasion, the accused, through counsel, orally waived his right to be present at the conference.[31]

¶ 55. As to the one communication in which defense counsel affirmatively waived on the record on the accused's behalf the accused's right to be present, the court of appeals treated the accused's right to be present as waived. When the court of appeals reviewed

[30] *State v. Bjerkaas,* 163 Wis. 2d 949, 957, 472 N.W.2d 615 (Ct. App. 1991).

[31] *State v. McMahon,* 186 Wis. 2d 68, 85–86 519 N.W.2d 621 (Ct. App. 1994). Defense counsel was not present for one of the jury conferences.

the accused's failure to be present at the other conferences, it did so as a direct challenge to the alleged error.[32]

¶ 56. In *State v. Peterson,* 220 Wis. 2d 474, 584 N.W.2d 144 (Ct. App. 1998), the court of appeals considered a challenge to a circuit court's communications with the jury during deliberations based on the accused's right to be present in Wis. Stat. § 971.04. In *Peterson,* the jury asked two questions regarding the meaning of certain terms in the jury instructions. Prior to responding to the questions, the circuit court held an in-chambers conference at which the accused's counsel and the prosecutor were present but the accused was not.[33] There is no indication that defense counsel objected on the grounds that the accused was absent from the conference. Noting that the accused did not affirmatively waive his right to be present, the court of appeals treated the claim as a direct challenge, engaging in a harmless error analysis, rather than as a claim of ineffective assistance of counsel.[34]

¶ 57. In *State v. Koller,* 2001 WI App 253, 248 Wis. 2d 259, 635 N.W.2d 838, the court of appeals addressed a constitutional challenge to a circuit court's communications with the jury during deliberations. In *Koller,* the jury asked the circuit court during deliberations if the jury could see evidence and a transcript of certain trial testimony. Without consulting the accused, accused's counsel, or the State's counsel, the circuit court responded to the jury through the bailiff that the items

---

[32] *McMahon,* 186 Wis. 2d at 86–88.

[33] *State v. Peterson,* 220 Wis. 2d 474, 479–80, 584 N.W.2d 144 (Ct. App. 1998).

[34] *Peterson,* 220 Wis. 2d at 487–89.

were "not available."[35] The accused's counsel did not object at trial to the ex parte communication upon learning of the communication after the fact.

¶ 58. Citing *Bjerkaas,* the court of appeals stated that "unless a defendant has waived his or her rights . . . the error is subject to harmless error analysis."[36] The court of appeals addressed the alleged error directly, not under a claim of ineffective assistance of counsel.

¶ 59. Thus, the court of appeals has on four occasions considered a circuit court's communications with the jury during jury deliberations outside the presence of the accused and without an objection at trial by the accused or accused's counsel as a direct challenge rather than as a claim of ineffective assistance of counsel.

¶ 60. In *State v. David J.K.,* 190 Wis. 2d 726, 528 N.W.2d 434 (Ct. App. 1994), the court of appeals addressed a constitutional challenge to the accused's absence during a voir dire proceeding as both a direct challenge and a claim of ineffective assistance of counsel.[37] As in *McMahon,* defense counsel was present and did not object on the ground that the accused was absent. The court of appeals first determined that the

---

[35] *State v. Koller,* 2001 WI App 253, ¶ 61, 248 Wis. 2d 259, 635 N.W.2d 838.

[36] *Koller,* 248 Wis. 2d 259, ¶ 62 (citing *Bjerkaas,* 163 Wis. 2d at 957–58).

[37] The circuit court conducted part of the voir dire in chambers because some of the potential jurors stated that they had had experiences with sexual abuse. *David J.K.,* 190 Wis. 2d at 735. It appears that David J.K. was present for the voir dire that was conducted in open court but when the voir dire was conducted in the judge's chambers, David J.K. was not included.

error was harmless beyond a reasonable doubt and then concluded that defense counsel was not ineffective.[38]

¶ 61. This decision to address the alleged error as both a direct challenge and a claim of ineffective assistance of counsel may be explained by the fact that, in his brief, the accused argued both of these positions but did not state that they were being argued in the alternative.

¶ 62. No subsequent decision has cited *David J.K.* for the proposition that an accused's absence from a substantive step in the trial when no objection was made at trial should be analyzed as a claim of ineffective assistance of counsel. *David J.K.* is cited in the *Peterson* decision, 220 Wis. 2d 474, 488, for the proposition that it is error to exclude an accused when the circuit court communicates with the jury, and, as we have discussed, the court of appeals in *Peterson* treated the accused's challenge as a direct challenge even though no objection to the accused's absence was made at trial.

¶ 63. Taken together, these cases support the conclusion that whatever the requirement for an accused's waiver of the right to be present when a circuit court communicates with the jury, something more than the failure to object is needed to convert the challenge from a direct challenge to the alleged error to a claim of ineffective assistance of counsel.

¶ 64. We conclude that although neither the defendant nor defense counsel objected to the circuit court's communicating with the jury in the defendant's absence, the alleged error is treated as a direct challenge in the appellate court, not as a claim of ineffective assistance of counsel.

---

[38] *David J.K.,* 190 Wis. 2d at 735–38.

## C

¶ 65. We turn now to the question whether the circuit court's communications with the jury outside the presence of defense counsel and without notice to or consultation with defense counsel violated the defendant's constitutional right to be represented by counsel.

¶ 66. The interpretation and application of a constitutional provision is a question of law that this court determines independently of the circuit court and court of appeals, benefiting from their analyses.[39]

¶ 67. An accused has the right to be represented by counsel at all critical stages of the trial.[40] Like the defendant's own right to be present, the right to have counsel present is guaranteed by Article I, Section 7 of the Wisconsin Constitution and the Sixth and Fourteenth Amendments to the United States Constitution.[41]

---

[39] *State ex. rel. Sielen v. Circuit Court for Milwaukee County,* 176 Wis. 2d 101, 106 499 N.W.2d 657 (1993).

[40] *Iowa v. Tovar,* 541 U.S. 77, 80–81 (2004) (citing *Maine v. Moulton,* 474 U.S. 159, 170 (1985) and *United States v. Wade,* 388 U.S. 218, 224 (1967)) ("The Sixth Amendment safeguards to an accused who faces incarceration the right to counsel at all critical stages of the criminal process."); *United States v. Gomez,* 490 U.S. 858, 873 (1989) (jury selection); *Burton,* 112 Wis. 2d at 564–65 (court communication with jury during deliberations); *Spencer v. State,* 85 Wis. 2d 565, 568–571, 271 N.W.2d 25 (1978) (jury instruction); *State v. Mills,* 107 Wis. 2d 368, 369–70, 320 N.W.2d 38 (Ct. App. 1982) (jury instruction).

[41] *Burton,* 112 Wis. 2d at 565 (citing *Rogers v. United States,* 422 U.S. 35, 38 (1975), *Spencer v. State,* 85 Wis. 2d 565, 570, 271 N.W.2d 25 (1978); *State v. Mills,* 107 Wis. 2d 368, 369–370, 320 N.W.2d 38 (Ct. App. 1982)).

¶ 68. A critical stage is any point in the criminal proceedings when a person may need counsel's assistance to assure a meaningful defense.[42] The assistance of counsel when a court communicates with the jury during deliberations may be necessary to a meaningful defense.

¶ 69. Indeed, our cases make clear that the right to counsel attaches for communications between the circuit court and the jury during deliberations.[43] As one federal court has colorfully observed, the purpose of defense counsel's presence in the context of a trial court's communication with the jury is to allow counsel to "prime the pump of persuasion" and, thus, potentially

---

[42] *United States v. Wade,* 388 U.S. 218, 225 (1967) ("The plain wording of this [Sixth Amendment] guarantee [of counsel] thus encompasses counsel's assistance whenever necessary to assure a meaningful 'defence.' ").

[43] *See Burton,* 112 Wis. 2d at 565. *Cf. United States v. Rogers,* 422 U.S. 35, 38–39 (1975) (addressing defendant's right under Fed. R. Crim. Pro. 43 to be present for jury communications).

In addition, the American Bar Association Criminal Justice Standards, Trial by Jury, Standard 15–5.2(a) (1996), provides for the presence of defense counsel for a determination of whether testimony should be read to the jury:

> If the jury, after retiring for deliberation, requests a review of certain testimony the court should notify the prosecutor and counsel for the defense, and allow all parties to be heard on the jury's request.

*ABA Standards for Criminal Justice: Discovery and Trial by Jury* Standard 15–5.2(a) (3d ed. 1996), *available at* http://www.abanet.org/crimjust/standards/jurytrial_toc.html (last visited June 22, 2006).

convince the court to address the jury communication in a manner that would support the defendant's interests.[44]

¶ 70. The circuit court thus erred by failing to have defense counsel present when it communicated with the jury in the present case.

■■■■■

¶ 71. No objection was made at trial to the circuit court's communicating with the jury outside the presence of defense counsel. An accused's failure to object to the absence of counsel is not a waiver of the right to counsel. An accused's waiver of counsel must be a knowing, voluntary, and intelligent waiver. "[C]ourts indulge every reasonable presumption against waiver of fundamental constitutional rights and we do not presume acquiescence in the loss of fundamental rights."[45]

¶ 72. In *State v. Klessig,* 211 Wis. 2d 194, 564 N.W.2d 716 (1997), the court stated that to satisfy the requirement of a knowing, voluntary, and intelligent waiver of counsel, a circuit court must conduct a colloquy to establish that the accused is aware of the charges against him, the seriousness of those charges, the potential penalties, and most important for the instant case, that he made a deliberate choice to proceed without counsel. The *Klessig* court stated:

---

[44] *United States v. Parent,* 954 F.2d 23, 26 (1st Cir. 1992). The presence of the accused would not have been sufficient to remove the specter of error from the circuit court's communication with the jury because the accused had a constitutional right to the assistance of counsel at that time.

[45] *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938), overruled in part on other grounds by *Edwards v. Arizona,* 451 U.S. 477 (1981) (quotation marks and citations omitted).

> To prove . . . a valid waiver of counsel, the circuit court must conduct a colloquy designed to ensure that the defendant: (1) made a deliberate choice to proceed without counsel, (2) was aware of the difficulties and disadvantages of self-representation, (3) was aware of the seriousness of the charge or charges against him, and (4) was aware of the general range of penalties that could have been imposed on him. If the circuit court fails to conduct such a colloquy, a reviewing court may not find, based on the record, that there was a valid waiver of counsel.[46]

¶ 73. In the instant case, the record does not reflect that any such colloquy was held with the defendant. We thus conclude, as mandated by *Klessig,* that the defendant did not waive his right to counsel in the present case and that the circuit court committed error in communicating with the jury outside the presence of defense counsel.

■■■■

¶ 74. Ordinarily, the absence of counsel at a critical stage of the trial is not subject to harmless error analysis. The United States Supreme Court has observed: "[W]hen a defendant is deprived of the presence and assistance of his attorney, either throughout the prosecution or during a critical stage in, at least, the prosecution of a capital offense, reversal is automatic."[47] Generally the denial of counsel is deemed a "structural error" and the harmless error analysis does not apply.[48]

¶ 75. Nonetheless, the United States Supreme Court observed in *United States v. Morrison,* 449 U.S.

---

[46] *State v. Klessig,* 211 Wis. 2d 194, 206, 564 N.W.2d 716 (1997) (citation omitted).

[47] *Holloway v. Arkansas,* 435 U.S. 475, 489 (1978).

[48] *Johnson v. United States,* 520 U.S. 461, 468–69 (1997) (citing *Gideon v. Wainwright,* 372 U.S. 335 (1963)).

361 (1981), that a violation of the right to counsel at certain critical stages of the proceeding may not warrant reversal of the judgment of conviction and, in some circumstances, a harmless error analysis may apply. In *Morrison,* the United States Supreme Court stated:

> Cases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests. . . . Our approach has thus been to identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial. The premise of our prior cases is that the constitutional infringement identified has had or threatens some adverse effect upon the effectiveness of counsel's representation or has produced some other prejudice to the defense. Absent such impact on the criminal proceeding, however, there is no basis for imposing a remedy in that proceeding, which can go forward with full recognition of the defendant's right to counsel and to a fair trial.[49]

¶ 76. Thus, although a circuit court's communications with the jury during deliberations are critical stages when the right to counsel may be necessary to protect the substantive rights of the accused, a harmless error analysis may apply to certain violations of the Sixth Amendment right to counsel.[50] This court and the

---

[49] Typically, when a defendant is denied the right to legal representation during a critical stage of the trial, a new trial is warranted without resort to harmless error analysis. For further discussion of the denial of the right to counsel, see *United States v. Morrison,* 449 U.S. 361, 364–66 (1981), and the cases cited therein.

[50] In *Satterwhite v. Texas,* 486 U.S. 249 (1988), the United States Supreme Court held that some violations of the Sixth

court of appeals have applied harmless error analysis to the denial of the Sixth Amendment right to counsel when the circuit court has had ex parte communications with the jury.[51] The State has the burden of persuasion that the error was harmless in the present case, that is, that counsel was not necessary to protect the accused's substantive rights.

D

¶ 77. We now consider whether the circuit court committed error by failing to make a record of or preserve a record of its statements or comments to the jury relating to the case.

---

Amendment right to counsel may be subject to harmless error analysis. In *Satterwhite,* the trial court required the capital defendant to undergo a psychological evaluation at the prosecution's request prior to the appointment of defense counsel and without advising counsel before the examination in violation of the Sixth Amendment right to counsel. *See Estelle v. Smith,* 451 U.S. 454 (1981).

The United States Supreme Court observed that while not all constitutional violations amount to reversible error, "[s]ome constitutional violations . . . by their very nature cast so much doubt on the fairness of the trial process that, as a matter of law, they can never be considered harmless. Sixth Amendment violations that pervade the entire proceeding fall within this category." *Satterwhite,* 486 U.S. at 256. The Court noted that, in the context of the Sixth Amendment right to counsel, reversal was automatic only in cases in which "the deprivation of the right to counsel affected—and contaminated—the entire criminal proceeding." *Id.* at 257. In light of the fact that evidence of the psychological evaluation of the defendant did not pervade the entire proceeding, the Court held that a harmless error analysis applied. *Id.* at 258.

[51] *Burton,* 112 Wis. 2d at 565; *Koller,* 248 Wis. 2d 259, ¶ 62; *Bjerkaas,* 163 Wis. 2d at 957.

¶ 78. Wisconsin Stat. § 805.13(1) requires that all statements or comments by the circuit court judge to the jury relating to the case shall be on the record:

> Statements by judge. After the trial jury is sworn, all statements or comments by the judge to the jury or in their presence relating to the case shall be on the record.[52]

¶ 79. The circuit court's statements or comments to the jury in the instant case were not on the record. Thus, the circuit court erred by failing to comply with Wis. Stat. § 805.13(1).

¶ 80. The circuit court also erred by failing to preserve as part of the record the written questions and written responses. Unfortunately no one attempted to retrieve the written communications, and this court does not have a record upon which to gauge the questions and the responses.

¶ 81. A circuit court's failure to make a record of communications with the jury as required by statute is error subject to a harmless error analysis. In light of the absence of a sufficient record, an appellate court will have great difficulty concluding that the circuit court's

---

[52] *See also Douglas-Hanson Co., Inc. v. BF Goodrich Co.*, 229 Wis. 2d 132, 153, 598 N.W.2d 262 (Ct. App. 1999), *aff'd by an equally divided court*, 2000 WI 22, 233 Wis. 2d 276, 607 N.W.2d 621, *overruled in part on other grounds by Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, 270 Wis. 2d 146, 677 N.W.2d 233 (Based on § 805.13(1), "the court's receipt of the jury's request for additional exhibits should have been conveyed to the parties and counsel.").

erroneous procedure in communicating with the jury was harmless error.[53]

## E

¶ 82. Finally, we consider whether the circuit court erred by refusing the jury's requests to have the defendant's and the victim's in-court testimony read to it while allowing the jury during deliberations to see and hear the victim's videotaped interview.

¶ 83. When a jury has questions regarding testimony, "the jury has a right to have that testimony read back to it, subject to the discretion of the trial judge to limit the reading."[54] This court will reverse a circuit court's decision refusing to read testimony to the jury when the circuit court has erroneously exercised its

[53] John P. Ludington, Annotation, *Postretirement Out-of-Court Communications Between Jurors and Trial Judge As Grounds for New Trial or Reversal in Criminal Case,* 43 A.L.R. 4th 410, § 2[a] (1986) (absence of a record of communications between judge and jury lends itself to reversal); *see also* 43 A.L.R. 4th 410, § 24 (same); *Brown v. State,* 682 N.W.2d 162, 166–67 (Minn. 2004) (highlighting the importance of an accurate and complete record, "particularly [at] a stage as delicate as communications with the jury and with counsel during deliberations," and explaining that the failure to make such record contributed to reversal); *People v. O'Rama,* 579 N.E.2d 189, 192 (N.Y. 1991) ("[T]he precise language and tone of the juror note may be critical to counsel's analysis"). *Cf. Kohlhoff v. State,* 85 Wis. 2d 148, 160, 270 N.W.2d 63 (conferences pertaining to judge-jury communications in response to juror questions "should be transcribed").

[54] *Kohlhoff v. State,* 85 Wis. 2d 148, 159, 270 N.W.2d 63 (1978) (citing *Jones v. State,* 70 Wis. 2d 41, 57, 233 N.W.2d 430 (1975), and *State v. Cooper,* 4 Wis. 2d 251, 255–56, 89 N.W.2d 816 (1958)).

discretion.[55] A circuit court erroneously exercises its discretion when it fails to exercise its discretion, when the facts do not support the circuit court's decision, when the circuit court applies the wrong legal standard, or when the circuit court fails to use a demonstrated rational process to reach a reasonable conclusion.[56]

¶ 84. A circuit court's erroneous exercise of discretion in refusing to read testimony to the jury on the jury's request is subject to a harmless error analysis.[57]

¶ 85. Before discussing whether the circuit court's decision to refuse the jury's request to hear the testimony was an erroneous exercise of discretion, we first must determine whether the circuit court in the instant case refused the jury's request.

¶ 86. At the hearing on postconviction motions, the circuit court denied that it had refused to provide the jury with the information it requested. It asserted that it had simply asked the jurors to refine their request so as not to waste their time or the limited time of the court reporters who would have to provide the information.

¶ 87. From the State's perspective, the circuit court never refused the jury's request to hear the in-court testimony. The State argues that the victim's

---

[55] *Kohlhoff,* 85 Wis. 2d at 159 (citing *State v. Tarrell,* 74 Wis. 2d 647, 659, 660, 247 N.W.2d 696 (1976), and *Patterson v. Phillips,* 216 Wis. 165, 172, 256 N.W. 624 (1934)).

[56] *Martindale v. Ripp,* 2001 WI 113, ¶ 45, 246 Wis. 2d 67, 629 N.W.2d 698; *Morden v. Cont'l AG,* 2000 WI 51, ¶ 81, 235 Wis. 2d 325, 611 N.W.2d 659; *Oostburg State Bank v. United Sav. & Loan Ass'n,* 130 Wis. 2d 4, 11–12, 386 N.W.2d 53 (1986).

[57] *See Jensen,* 147 Wis. 2d at 262 (harmless error applies to circuit court decision whether to allow jury access to evidence during deliberations).

and defendant's in-court testimony was not read back to the jury because the jury failed to respond to the circuit court's questions seeking clarification of the jury's request to have the testimony read to it.

¶ 88. In contrast, the defendant contends that the circuit court's failure to follow up on the jury's response to the circuit court's note effectively denied the jury's request. The defendant asserts that the circuit court's question to the jury was impossible for the jury to answer because the jury's problem was that it could not recall the defendant's testimony. How was the jury to answer the circuit court's question, the defendant asks, about what part of the defendant's testimony it could not remember or understand, when the jury was asserting it could not remember or understand the defendant's testimony?

¶ 89. The State responds that the jurors could have specified portions of the testimony they wished read back, such as stating that they wished to hear the defendant's testimony about his conversations with his wife or the defendant's testimony about his travels outside the state.

■■■

¶ 90. How the circuit court responds to a jury's inquiry is committed to that court's discretion,[58] but we conclude that the circuit court frustrated the jury's request to have the in-court testimony read by failing to follow up on the circuit court's request to the jury for clarification. We do not know why the circuit court chose not to follow up on its second communication to the jury. We might posit that because the jury did not answer the circuit court's inquiry, it no longer wished to have the testimony read

---

[58] *Kohloff,* 85 Wis. 2d at 159; *State v. Lombard,* 2004 WI App 52, ¶ 11, 271 Wis. 2d 529, 678 N.W.2d 338.

back. The jury may affirmatively abandon its efforts to have the testimony read back, but no such affirmative abandonment occurred here.

¶ 91. When the circuit court in the present case failed to follow up on the jury's request for further information, we conclude that it in effect denied the jury's request to have the testimony read back.

¶ 92. Having established that the circuit court's actions constitute a refusal of the jury's request to have the testimony read back, we now proceed to determine whether that refusal was an erroneous exercise of the circuit court's discretion.

¶ 93. When the circuit court exercises its discretion in deciding whether to read testimony to the jury during its deliberations, the circuit court should consider such factors as whether the evidence will aid the jury in the proper consideration of the case, whether the evidence could be subjected to improper use by the jury, whether a party will be unduly prejudiced if the jury is allowed to view the evidence again, and whether the deliberations will be unduly extended by the circuit court's reading lengthy testimony.[59]

¶ 94. In determining whether the circuit court erroneously exercised its discretion in refusing to read in-court testimony to the jury during jury deliberations, we examine the reasoning of the circuit court and the factors the circuit court considered.

¶ 95. Initially, we observe that in the circuit court's recounting of its communications with the jury, the

---

[59] *See Jensen,* 147 Wis. 2d at 260 (holding that a written confession could be sent to the jury, subject to the circuit court's proper exercise of discretion).

circuit court acknowledged that it had given the jury its "standard answer" to a request to hear the testimony, rather than carefully considering the request under the circumstances of the instant case.

¶ 96. The circuit court first explained that reading the testimony would be "cumbersome." Yet nothing in the record establishes "cumbersomeness." The victim's in-court testimony and the defendant's testimony are rather brief. The victim's testimony covers 18 pages of transcript. The defendant's testimony covers 25 pages. To read all 43 pages of transcript requested by the jury would probably have taken no longer than 45 minutes.[60] The victim's videotaped interview, which the circuit court gave the jury, runs approximately 36 minutes. The circuit court failed to consider whether in this particular case the reading of the testimony would be cumbersome enough to justify its refusal to read the testimony.

¶ 97. We do not mean to foreclose the possibility that the circuit court could have read the jury only part of the transcript. Had the circuit court read part of the transcript, we would be presented with a different case. We agree with the characterization in Judge Kessler's concurring and dissenting opinion in the court of appeals: the jury "wanted to hear it all, so they heard nothing."[61]

---

[60] The circuit court, of course, did not have transcripts at the point in the trial when the jury requested that the testimony be read back. However, because the testimony had been taken within two days of when the jury made the request, the circuit court and court reporter might have had a fairly good estimate of the time required to read the testimony.

[61] *State v. Anderson,* 2005 WI App 238, ¶ 35, 288 Wis. 2d 83, 707 N.W.2d 159 (Kessler, J., concurring in part & dissenting in part).

¶ 98. The circuit court's reconstruction of the communications also demonstrates that the circuit court failed to consider that the instant case turned on the credibility of the defendant and the victim, and the jury was apparently having difficulty with the issue. The jury requested this testimony, after two other requests for evidence, on the second day of deliberations after several hours of deliberations. The jury began deliberations at 3:20 p.m. on the second day of trial and retired at 5:45 p.m. that day. The jury returned a verdict at about 1:30 p.m. the following day. The jury was likely rather far along in the deliberation process when it requested the testimony.

¶ 99. It appears from the jury's request for the testimony that the jury was attempting to evaluate the defendant's and victim's credibility and their respective versions of events. The jury had first asked for all the evidence and then asked for a police report. The jury had listened to and watched the victim's videotaped interview in the jury room. Now the jury wanted to hear the victim's direct and cross-examination testimony and the defendant's testimony explaining the events. Thus it appears that the requested testimony would have been of aid to the jury in the proper consideration of the case. The circuit court failed to consider these circumstances. Defense counsel might have been able to persuade the circuit court to grant the jury's request or to phrase its response to the jury in different, more understandable terms had counsel been included in the circuit court's decision.

¶ 100. In exercising its discretion in deciding whether to read the testimony to the jury, the circuit court also failed to consider that it had allowed the jury to hear the victim's entire videotaped interview in the jury room, during deliberations. In sending the video-

tape into the jury room the circuit court did not ask the jury what part of the videotape it did not remember or understand. Instead the circuit court stated that it would defer to the jury's perceived need to see and hear the evidence.

¶ 101. The circuit court used a different standard in determining whether to send the victim's videotaped interview into the jury room and whether to read the in-court testimony to the jury. The circuit court, without explanation, applied different rules to the jury's request to hear the defendant's and victim's in-court testimony, testimony that was subject to cross-examination. Here, the circuit court asked the jury what it did not understand or remember before it would read any testimony. Here, the circuit court failed to defer to the jury's perceived need for a reading of the testimony.

¶ 102. The circuit court viewed the reading of testimony as cumbersome and perhaps unnecessary. It did not apply that test to the videotape.

¶ 103. In sending the videotape into the jury room, the circuit court erroneously stated that the videotape was not a direct examination of the victim but was offered to corroborate her testimony. But it had the effect of a direct examination. The victim's in-court testimony was essentially the same as the videotape. Perhaps in determining the credibility of the victim, the jury was trying to compare the videotape and in-court testimony in order to resolve questions about the victim's and the defendant's testimony. The circuit court erroneously concluded that in rehearing the videotape the jury would not encounter the dangers inherent in reading back the testimony of a single witness. But the videotape was the testimony of a single witness. The circuit court's permitting the jury to see and hear

the victim's entire videotaped interview in the jury room overemphasized the State's evidence and the victim's out-of-court statements.

¶ 104. Reading the testimony to the jury would have given the defendant an opportunity to be heard again by the jury and would have enabled the circuit court to avoid the danger of overemphasis of an out-of-court statement relative to the in-court testimony.[62] In *Franklin,* we explained that allowing a jury to hear an audiotaped confession in the jury room was of concern because tape "presents a danger of *overemphasis* of the confession relative to testimony given from the witness stand."[63]

¶ 105. Similarly, in *State v. Payne,* 199 Wis. 615, 629–30, 227 N.W. 258 (1929), the court warned of the risk of undue emphasis on one side's case that might result if testimony of one side but not the other were brought into the jury room:

> [I]t is obvious that to permit a jury to take the written portion of the testimony to the jury room, compelling them to rely upon their memories for the testimony on the other side, gives one side of the controversy an undue advantage, and it would seem plain that such exhibits should not be permitted to be taken to the jury room.[64]

---

[62] *State v. Rutchik,* 116 Wis. 2d 61, 79–80, 341 N.W.2d 639 (1984).

[63] *Franklin v. State,* 74 Wis. 2d 717, 724, 247 N.W.2d 721 (1976) (emphasis added).

[64] *State v. Payne,* 199 Wis. 615, 629–30, 227 N.W. 258 (1929), created a per se rule that written confessions could not go to the jury. In *Jensen,* 147 Wis. 2d at 260, the court overturned this per se rule but maintained the principle that a circuit court must be diligent in avoiding overemphasis on evidence brought into the jury room.

¶ 106. In *State v. Jaworski,* 135 Wis. 2d 235, 400 N.W.2d 29 (Ct. App. 1986), the court of appeals considered the issue of undue influence when the circuit court granted the jury's request for written statements that were damaging to the accused. The accused's counsel objected. The court of appeals observed that "[t]his is not a case where the jury has been prejudiced by having undue weight placed upon certain evidence by the court; the jury itself considered certain evidence important enough to request it during its deliberations."[65]

¶ 107. The result of the circuit court's decision in the present case is obvious: The direct testimony of the State's most significant witness could be replayed in its entirety while the jury was not permitted to hear again the in-court testimony and cross-examination of the victim or the defendant, even though the jury believed it needed the in-court testimony to decide the case.

¶ 108. The State's argument in closing at trial and in arguing harmless error in this court is that the victim's videotaped interview was extremely compelling evidence. The argument magnifies the circuit court's erroneous exercise of discretion in failing to consider the videotape when refusing to read the defendant's and victim's testimony as requested by the jury. With the circuit court's sanction, or more precisely because of the circuit court's sanction, the jury was permitted to view the videotape again, but never heard any testimony again. Without careful consideration of the particular circumstances of the present case, the circuit court created a situation in which the jury could overemphasize the victim's version of events.

---

[65] *State v. Jaworski,* 135 Wis. 2d 235, 244, 400 N.W.2d 29 (Ct. App. 1986) (emphasis added).

¶ 109. In gauging the circuit court's exercise of discretion in responding to the jury's request, we also apply the legal standard that a circuit court is obligated to respond to a jury inquiry with sufficient specificity to clarify the jury's problem. In *State v. Booth,* 147 Wis. 2d 208, 212–13, 432 N.W.2d 681 (Ct. App. 1988), the court of appeals explained that the circuit court had a duty "upon receiving a question or request from the jury . . . to respond [to the inquiry] with sufficient specificity to clarify the jury's problem."[66]

¶ 110. In responding to the jury's inquiry in the instant case, the circuit court failed to satisfy the legal standard of specificity. The jury wanted testimony read to it because the jury could not remember or did not understand all of the defendant's testimony. In response, the circuit court asked the jury to state what it did not understand. In the present case, the circuit court's request that the jury itemize matters it did not remember or understand placed an unnecessary burden on the jury, discouraging the resolution of doubt or conflict among the jurors as to the import of evidence presented at trial.

¶ 111. Under the facts before us, we conclude that the circuit court erroneously exercised its discretion in determining whether to read the victim's and defendant's testimony by resorting to its "standard answer" rather than considering the facts of the particular case before it. The circuit court's exercise of its discretion was not based on demonstrated reasoning and resulted in allowing the jury to overemphasize the victim's videotaped interview without hearing again the

---

[66] Quoting *Davis v. Greer,* 675 F.2d 141, 145 (7th Cir. 1982).

in-court testimony of the victim or the defendant. Accordingly, we conclude that the circuit court erroneously exercised its discretion in refusing to read the testimony the jury requested.

## III

¶ 112. The preceding discussion establishes that the circuit court erred by allowing the jury to view the victim's videotaped interview in the jury room rather than in open court; by communicating with the jury outside the presence of the defendant and defense counsel and without notice to or consultation with either the defendant or defense counsel; by communicating with the jury off the record and failing to preserve the written communications with the jury on the record; and by denying the jury's request to have the defendant's and victim's in-court testimony read to it while granting the jury's request during deliberations to view the victim's videotaped interview in the jury room.

¶ 113. We now determine whether any of the errors were prejudicial. The defendant contends that the circuit court's errors contributed to the verdict obtained.

¶ 114. The court has formulated the test for harmless or prejudicial error in a variety of ways.[67] The United States Supreme Court set forth a test for harmless error in *Chapman v. California,* 386 U.S. 18 (1967), *reh'g denied,* 386 U.S. 987 (1967). Under *Chapman,* the error is harmless if the beneficiary of the error

---

[67] This court has articulated several factors to aid in the analysis of harmless error. *See, e.g., State v. Norman,* 2003 WI 72, ¶ 48, 262 Wis. 2d 506, 664 N.W.2d 97; *State v. Billings,* 110 Wis. 2d 661, 668–70, 329 N.W.2d 192 (1983).

proves "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."[68]

¶ 115. "In recent years, the United States Supreme Court and this court, while adhering to the *Chapman* test, have also articulated alternative wording. *See, e.g., Neder v. United States,* 527 U.S. 1, 2–3 (1999); *State v. Weed,* 2003 WI 85, ¶ 29, 263 Wis. 2d 434, 666 N.W.2d 485; *State v. Harvey,* 2002 WI 93, ¶ 48, n.14, 254 Wis. 2d 442, 647 N.W.2d 189."[69] The *Neder/Harvey* test for harmless error asks whether it is

---

[68] *Chapman v. California,* 386 U.S. 18 (1967), *reh'g denied,* 386 U.S. 987 (1967); *State v. Hale,* 2005 WI 7, ¶ 60, 277 Wis. 2d 593, 691 N.W.2d 637.

[69] *State v. Hale,* 2005 WI 7, ¶ 59 n.9, 277 Wis. 2d 593, 691 N.W.2d 637; *id.,* ¶¶ 79–84 (Abrahamson, C.J., concurring) (discussing *Chapman* and *Neder* formulas for harmless error); *id.,* ¶¶ 87–88 (Wilcox, J., concurring) (same).

*See also Neder v. United States,* 527 U.S. 1, 18 (1999) ("Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?"); *Chapman v. California,* 386 U.S. 18, 24 (1967) (State must "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained . . . [and] the court must be able to declare a belief that it was harmless beyond a reasonable doubt."); *Koller,* 248 Wis. 2d 259, ¶ 62 ("An error is harmless if there is no reasonable possibility that the error affected the outcome of the trial.").

For further discussion of harmless error in Wisconsin, see *State v. DeLao,* 2002 WI 49, ¶ 59 n.10, 252 Wis. 2d 289, 315, 643 N.W.2d 480 ("We recognize that there has been a gradual merger of this court's collective thinking in respect to harmless versus prejudicial error. Regardless of whether the test is prejudicial error or harmless error, or whether any difference between the two remains, our conclusion in this case is the same." (citation and quotation marks omitted)).

"clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error."[70]

¶ 116. We conclude that whatever test we use in applying a harmless error analysis in the instant case, the error here was not harmless.

¶ 117. In the present case, the lack of a record of communications between the circuit court and the jury and the circuit court's erroneous exercise of discretion in deciding not to read to the jury all or part of the defendant's and victim's testimony as requested by the jury when the jury had access to the victim's videotaped interview in the jury room were prejudicial errors, combining "to contribute to the verdict obtained."[71]

¶ 118. "A factor weighing heavily in favor of the prejudicial nature of an ex parte judge-jury communication is the absence of a complete record of the communication, because a reviewing court is thus deprived of an opportunity to make an assessment of the prejudicial effect of the communication."[72] The circuit

---

[70] *State v. Harvey,* 2002 WI 93, ¶ 46, 254 Wis. 2d 442, 647 N.W.2d 189 (quoting *Neder v. United States,* 527 U.S. 1, 18 (1999).

[71] *See Chapman,* 386 U.S. at 24; *Hale,* 277 Wis. 2d 593, ¶ 60.

[72] John P. Ludington, Annotation, *Postretirement Out-of-Court Communications Between Jurors and Trial Judge As Grounds for New Trial or Reversal in Criminal Case,* 43 A.L.R. 4th 410, § 2[a] (1986); *see also* 43 A.L.R. 4th 410, § 24 ("In some cases involving improper ex parte judge-jury communications during the deliberative phase of a criminal prosecution, the absence of a complete record as to the alleged communications has been held a factor weighing heavily in favor of reversal, since the appellate court is thereby deprived of an opportunity

court could have improperly influenced the jury deliberations, even if such influence was accidental.[73] We cannot fully gauge the jury's questions and the responses from the record before the court.

¶ 119. The circuit court's erroneous exercise of discretion in giving the jury the victim's videotaped interview to be viewed in the jury room while refusing the jury's request to hear in-court testimony of the victim and the defendant was prejudicial error. When credibility is a crucial issue, a videotape of an out-of-court statement of the victim takes on great significance, especially when the in-court testimony was limited. Allowing a jury to see and hear the victim's videotaped statements a second time in the jury room during deliberations unduly emphasizes the victim's statements. "Permitting the replay of the video . . . in the jury room during deliberation was equivalent to allowing a live witness to testify a second time in the jury room."[74] Further, by allowing the jury to watch the video in the jury room rather than in open court, the circuit court deprived itself and the defendant of the opportunity to instruct the jury regarding possible overemphasis on any one piece of evidence.

¶ 120. The circuit court's allowing the jury to place undue emphasis on the videotape was aggravated in the present case when the circuit court refused to

---

to make an assessment of the prejudicial effect of the communication."). *Cf. Kohlhoff,* 85 Wis. 2d at 160 (conferences pertaining to judge-jury communications in response to juror questions "should be transcribed").

[73] *Cf. Burton,* 112 Wis. 2d at 571–72 (ex parte jury communications held harmless where there was a record and the communications were not substantive in nature).

[74] *United States v. Binder,* 769 F.2d 595, 601 (9th Cir. 1985), *cert. denied,* 484 U.S. 1073 (1988).

grant the jury's request to hear the victim's and defendant's in-court testimony again.

¶ 121. In a case turning on the credibility of witnesses, the jury was obviously having difficulty sorting it all out and wanted to be able to re-examine the evidence. As the Alaska Supreme Court has observed, "A jury's request to review evidence during its deliberations obviously raises questions of great importance to a criminal defendant's rights, as it generally reflects doubt or disagreement on the part of at least some of the jurors . . . ."[75]

¶ 122. One reasonable explanation of the jury's request for the testimony—after several hours of deliberation—is that it had serious doubts about the outcome of the case and wanted to hear the testimony again to determine whether a guilty verdict was appropriate. In other words, the jury may have doubted the verdict that it eventually reached, but was not permitted to have testimony read, upon request, that might have been contrary to that verdict.

¶ 123. The point is this: The jury clearly valued the testimony that it sought to hear. The circuit court denied the jury's request without examining the circumstances of the instant case. In light of the value the jury clearly placed on the in-court testimony, we cannot say beyond a reasonable doubt that the circuit court's failure to read the victim's and defendant's testimony to the jury did not contribute to the verdict obtained.

¶ 124. The court of appeals concluded that the circuit court's failure to read back the defendant's

---

[75] *Dixon v. State,* 605 P.2d 882, 887 (Alaska 1980). *See also Murray v. State,* 83 Wis. 2d 621, 628, 266 N.W.2d 288 (1978) ("The fact that the jury specifically requested that Knuckles' testimony be re-read after several hours of deliberation indicates the crucial nature of the testimony.").

testimony did not prejudice the defendant, given the State's strong case and the defendant's weak defense. Indeed the court of appeals observed that had the testimony been read back, it is likely that the rereading would have hurt the defendant more than it would have helped him.[76]

¶ 125. We agree with the court of appeals that the evidence was sufficient to convict the defendant. But we have repeatedly stated that harmless error is not a sufficiency of the evidence test.[77] We agree with the defendant that the circuit court created a situation of undue emphasis on the State's portion of the case, which contributed to the verdict obtained. In the instant case these errors were not harmless.

\* \* \* \*

¶ 126. We conclude that the circuit court erred:

(A) by allowing the jury to see and hear the victim's videotaped interview in the jury room during deliberations rather than on the record in open court;

(B) by communicating with the jury during its deliberations outside the presence of the defendant and without notice to or consultation with the defendant;

(C) by communicating with the jury outside of the presence of defense counsel and without notice to or consultation with the defense counsel;

(D) by failing to make or preserve a record of its statements or comments to the jury relating to the case; and

---

[76] *State v. Anderson*, 2005 WI App 238, ¶ 19, 288 Wis. 2d 83, 707 N.W.2d 159.

[77] *See, e.g., Hannemann v. Boyson*, 2005 WI 94, ¶ 58, 282 Wis. 2d 664, 698 N.W.2d 714; *State v. Weed*, 2003 WI 85, ¶ 28, 263 Wis. 2d 434, 666 N.W.2d 485.

(E) by refusing the jury's requests to have the defendant's and the victim's in-court testimony read to it while allowing the jury during deliberation to see and hear the victim's videotaped interview.

¶ 127. We conclude that the circuit court committed error in each respect and that the defendant was prejudiced. Accordingly, the decision of the court of appeals is reversed, the judgment of conviction vacated, and the matter remanded to the circuit court for a new trial.

*By the Court.*—The decision of the court of appeals is reversed and the cause remanded.

¶ 128. PATIENCE DRAKE ROGGENSACK, J. (*dissenting*). The majority identifies several circuit court decisions that it concludes are error. Majority op., ¶ 2. For the purposes of this dissent, I will assume, without deciding, that the circuit court did err.[1] When I examine those assumed errors under the standards for determining whether they were harmless, I do so based on the actual testimony from Lionel Anderson's trial for first-degree sexual assault of a child. The majority employs similar harmless error standards; however, it applies them to abstract principles, not to the concrete facts of this case. This is where we differ. I conclude that

---

[1] The claimed errors that the majority opinion relies on are: permitting the videotape of the victim's testimony to be played in the jury room, rather than in open court, not acceding to the jury's request to have the child's courtroom testimony and Anderson's courtroom testimony read in the jury room, answering two questions from the jury without Anderson and counsel being present, failing to direct the bailiff to retrieve the two jury questions and the court's written answers from the wastebasket where the jury deposited them so there would be exact statements of what was said. Majority op., ¶ 2.

all errors, in light of the actual testimony, were harmless beyond a reasonable doubt, irrespective of which harmless error test is employed. Accordingly, because I would affirm the court of appeals decision upholding Anderson's conviction, I respectfully dissent.

## I. DISCUSSION

¶ 129. The errors described in the majority opinion range from discretionary decisions of the circuit court, to ignoring statutory directives, to constitutional concerns. However, as the majority opinion states, all of Anderson's claims of error are subject to harmless error analyses. Majority op., ¶¶ 112–25.

### A. Harmless Error

¶ 130. We have explained that for an error to affect the substantial rights of a party and warrant reversal, it must be clear beyond a reasonable doubt that the result of the proceeding would not have been the same absent the error. *State v. Harvey*, 2002 WI 93, ¶ 46, 254 Wis. 2d 442, 647 N.W.2d 189. We have concluded that this test is based on *Chapman v. California*, 386 U.S. 18 (1967). *Harvey*, 254 Wis. 2d 442, ¶¶ 44–46. It is also asserted that the test was established in *Neder v. United States*, 527 U.S. 1 (1999). *Harvey*, 254 Wis. 2d 442, ¶ 51 (Crooks, J., concurring). We have earlier articulated the test for harmless error as "whether there is a reasonable possibility that the error contributed" to the outcome. *State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222 (1985). We explained that a "reasonable possibility" under Wisconsin law is the equivalent of "reasonable probability" in United States Supreme Court parlance. *Harvey*, 254 Wis. 2d 442, ¶ 41. The specific wording of the test has been a

matter of dispute on this court for some time. *Id.*, ¶ 52 n.1, (Crooks, J., concurring); *see also State v. DeLao,* 2002 WI 49, ¶ 59 n.10, 252 Wis. 2d 289, 643 N.W.2d 480 (recognizing a coalescence of varying standards for harmless error, but determining that under the specific facts of the case, it did not matter which standard was applied to the specific error in the case); *see also Hannemann v. Boyson,* 2005 WI 94, ¶ 57, 282 Wis. 2d 664, 698 N.W.2d 714 ("In other words, if it is clear beyond a reasonable doubt that a rational jury would have [rendered the same verdict] absent the error, then the error did not contribute to the verdict" and is harmless (internal quotes omitted)).

¶ 131. The result of the harmless error analysis in this case does not turn on how one phrases the test; either phrasing will yield the same result. The majority opinion agrees that the same result will be reached regardless of which phrasing of harmless error is employed. Majority op., ¶ 116. I reach a different conclusion about harmless error than the majority opinion does because a harmless error analysis is a fact-driven analysis, and the majority opinion eschews the facts.

¶ 132. The majority opinion reaches its conclusions about harmless error without reviewing the actual testimony that the jury heard, but instead, discusses the effect of the errors in terms of abstract principles. However, a jury's verdict is driven by the facts it hears. Therefore, I discuss the claimed errors in light of the actual testimony that was presented to the jury in the courtroom and in the jury room, as well as the testimony the jury requested but did not hear during deliberations.

B. Claims of Error

 1. Testimony requested by the jury during deliberations

 ¶ 133. The majority opinion does not conclude that the circuit court erroneously exercised its discretion in permitting the jury to see the child's videotape testimony after it began deliberations. Majority op., ¶ 29. Instead, it concludes it was error to permit the jury to see the child's videotaped interview in the jury room, rather than in open court. *Id.*

 ¶ 134. As a starting point, I note that when a jury has questions about testimony presented in the courtroom, "the jury has a right to have that testimony read to it, subject to the discretion of the trial judge to limit the reading." *Kohlhoff v. State,* 85 Wis. 2d 148, 159, 270 N.W.2d 63 (1978). Permitting the jury to review evidence in the jury room, without some other aggravating circumstances, is not an erroneous exercise of discretion, even when the evidence favors one of the parties, which most evidence does. *State v. Jensen,* 147 Wis. 2d 240, 260–61, 432 N.W.2d 913 (1988).

 ¶ 135. In *Jensen,* the circuit court permitted Jensen's confession to go to the jury during its deliberations, which was claimed to be an erroneous exercise of discretion. *Id.* at 258. In examining the claimed error, we overruled *State v. Payne,* 199 Wis. 615, 227 N.W. 258 (1929), which had established a per se rule against sending a defendant's confession to the jury room.[2]

---

 [2] The majority opinion relies heavily on *Franklin v. State,* 74 Wis. 2d 717, 247 N.W.2d 721 (1976), for its conclusion that the jury should not have been permitted to view the videotape in the jury room. However, *Franklin* is based on *State v. Payne,* 199 Wis. 615, 227 N.W. 258 (1929), which we overruled in *State*

*Jensen,* 147 Wis. 2d at 259. We replaced the per se rule with a list of factors under which this type of claimed error should be evaluated: (1) whether the testimony would aid the jury in its consideration of the case; (2) whether the defendant would be "unduly prejudiced" by jury access to this evidence during deliberations; and (3) whether the evidence would be subject to improper use by the jury. *Id.* at 260. Later in *Jensen,* we explained that even if we had not chosen to overrule *Payne,* we would conclude that providing the defendant's confession to the jury during deliberations was harmless error, by examining the same three factors set out above. *Id.* at 262.

¶ 136. Because I have assumed all alleged errors are actually errors for the purposes of this appeal, I examine the three *Jensen* factors for harmless error in regard to playing the videotape in the jury room. First, the videotape would aid the jury in its deliberations. It would permit a review of the facts told by the child that relate to sexual assault, as the child told them soon after the assault had occurred. Second, Anderson was not "unduly prejudiced" by the jury's review of this testimony, simply because it favored the State. Most evidence favors one party or another. That Anderson's conviction had a "credibility element" to it is no different than was present in *Jensen* where we permitted the confession to go to the jury room and said, "The issue was credibility—the credibility of the defendant, of the police officers and of the complainant." *Id.* at 261. Third, there is nothing in the record to suggest that the

*v. Jensen,* 147 Wis. 2d 240, 259, 432 N.W.2d 913 (1988). Accordingly, *Franklin's* conclusion that it is error to permit a showing of a videotape in the jury room, without some other aggravating circumstances not present here, is no longer good law.

location where the jury saw the videotape affected its verdict. The circuit court carefully instructed the bailiff that he was to be present when the videotape was shown and that he was to permit the jury to see the videotape only one time. Anderson does not contend that the bailiff did not follow these instructions. Therefore, the jury did not improperly use the videotape.

¶ 137. Furthermore, the videotape was carefully introduced by the social worker who conducted the videotaped interview of the victim. The social worker testified about the interviewing technique she used and her conversations with the child. She concluded that the child was not "suggestible"; that the child understood the difference between a truth and a lie; and that the child had promised to tell the truth. The social worker explained:

Q: [D]id you use the Step-Wise protocol when you interviewed M?

A: Yes, I did.

Q: In the report phase, did you test whether or not she would correct you when you made a mistake?

A: Yes.

Q: What did you find?

A: That she did.

Q: And what about her willingness to say, I don't know, when she didn't know the answers to the questions?

A: She specifically, when I asked her how old her mom was, said, I don't know.

Q: What did you conclude from that?

A: That she wasn't going to go along with everything I said. She was not suggestible.

Q: Did you ask her open-ended questions when you got to the disclosure phase from— about the abuse?

A: Yes.

Q: And she was able to answer open-ended questions?

A: Yes. Not extensively. She was only eight. She gave information at that level, yes.

Q: Did you videotape your interview of M[]?

A: Yes.

. . .

Q: [D]id M[] demonstrate that she knew the difference between a truth and a lie?

A: Yes, she did.

Q: Was she able to accurately give answers to the hypothetical questions you posed to her?

A: Yes.

Q: Did she understand that there were consequences to lying?

A: She named three different negative consequences for lying.

Q: Did she indicate she knew it was important to tell the truth?

A: Yes.

Q: And did she promise you to tell the truth?

A: Yes, she did.

736

¶ 138. After the social worker had testified about the process she employed when interviewing the child, the videotaped interview was played in open court. It contained the following questioning of the eight-year-old child by the social worker:

Q: So it sounds like you had a problem with your dad. Were you in your mom's room with your sisters?

A: No. In the kitchen.

Q: What happened in the kitchen?

A: He called my name and, uh, I said 'what' and he said 'are you gonna do my thing' and then he made me do it.

Q: He made you do it? Where were you when he made you do it?

A: In the kitchen.

Q: Oh, okay, so you were in the kitchen when he made you do it?

A: Mm-hmm.

Q: Okay. So, when he called you it sounds like you were with your sisters?

A: Mm-hmm.

Q: In what room?

A: My mom's room.

Q: Okay. So it sounds like your dad called you, he said do you wanna do it, you said no, he made you do it in the kitchen, and then you went back to your sisters in your mom's room, your mom came home from Kmart, you looked at what she bought, and then you went to bed.

737

A: Mm-hmm.

Q: Tell me what else you remember about that.

A: Well, um, I forgot.

. . .

Q: When you said he asked you if you wanted to do it, what did he say? Tell me exactly his words if you can remember.

A: 'Do you want to play with my tail' and I said 'no' and that's all.

Q: Okay. So he would say 'do you want to—' He said 'do you want to play with my tail'?

A: Mm-hmm.

Q: And you said 'no.' And then what happened right after that?

A: He pulled down his pants and made me do it.

Q: He pulled down his pants and made you do it? Okay. Tell me what he made you do.

A: He made me get down on my knees and suck it.

Q: He made you get down on your knees and suck it?

A: Mm-hmm.

Q: Okay. And then what happened?

A: And that's all.

Q: Okay. And tell me about the sucking part.

A: It was black and it was pink inside and it was hairy on the bottom.

Q: What was?

A: His tail.

Q: His tail was black, and pink on the inside, and hairy on the bottom? Okay. What does a tail do?

A: Pee.

. . .

Q: Do you call that part on a boy—or a man—something besides a tail?

A: In the front?

Q: Mm-hmm.

A: Um— a dick.

Q: A dick? Okay.

. . .

Q: So, it sounds like your dad had you kneel down and suck on his tail?

A: Uh-hmm.

Q: Okay. Tell me what that was like.

A: Mm— nothing. It was nasty and yellow stuff came out of it.

Q: It was nasty and yellow stuff came out of it? Okay. And where did the yellow stuff go?

A: In my mouth.

Q: And what happened then?

A: I went to the bathroom and spit it out.

Q: Where?

A: In the bathroom.

Q: Where in the bathroom?

A: In the toilet.

¶ 139. The majority opinion next claims that it was error to permit playing the videotape while not providing a reading of the child's in-court testimony and Anderson's in-court testimony, both of which were requested by the jury. Majority op., ¶ 2. One of the reasons that the majority opinion concludes this was not harmless error is because the child, in her trial testimony, "on direct examination, she did not recite the allegations stated in the videotaped interview." Majority op., ¶ 8.

¶ 140. The majority opinion's representation at ¶ 8, misstates the contents of the child's testimony. The child's testimony recited the same facts in the courtroom as she did in videotaped testimony. I briefly quote from the child's courtroom testimony to demonstrate the overwhelmingly convincing nature of that testimony, which was consistent with her videotaped allegations of sexual assault:

Q: . . . What caused you to leave the room?

A: He was calling my name.

Q: And he's Lionel?

A: Yes.

Q: And when— Do you know how far away that room is from where he was?

A: Yes.

Q: How far away is it?

A: Two feet.

Q: Two feet. And what room were you called to?

A: The kitchen.

Q: And what's in the kitchen?

A: Table.

Q: What kind of table?

A: Glass.

Q: Is that table still there today?

A: Uh-huh.

Q: Yes. When you say, Uh-huh, you mean yes, right?

A: Yes.

Q: And what were you asked to do?

A: Suck the thing.

Q: Suck his thing, okay. And how— Were you standing up?

A: On my knees.

Q: Was he standing up?

A: No.

Q: What was he doing?

A: Sitting down.

. . .

741

Q: Can you describe the thing for me?

A: Black and pink.

Q: Black and pink. Where is it pink?

A: Inside.

Q: Inside. How— I mean, do you have to pull anything back?

A: Uh-huh.

Q: Yes?

A: Yes.

Q: Can you be more specific as to where it is pink?

A: On the inside.

Q: Okay. Do you remember how long the thing was?

A: No.

Q: No. Okay. Can you tell us anything else about the thing?

A: It was black on the outside.

Q: Okay. And anything else?

A: No.

Q: Okay. And when you had to suck on his thing, did he do anything else to you?

A: Some stuff came out.

Q: Some stuff came out. What stuff?

A: Yellow.

742

Q: Yellow. Like yellow— like this yellow or a different yellow?

A: Light.

Q: Lighter?

COURT: Like this? So the record is clear, Mr. Smith is holding up a legal pad.

Q: I didn't hear your answer?

A: It was lighter.

Q: Lighter. And does it taste like anything?

A: No.

Q: No. What did you do after that?

A: Went to the bathroom and spit it out.

Q: This happened three times?

A: Twice.

As can be readily determined by reviewing what the jury heard in the courtroom, the child's testimony in court repeated in detail the same allegations she made previously.

¶ 141. The majority argues that showing the videotape in the jury room was error, when combined with other factors, one of which was failing to read the victim's trial testimony:

> In the present case, the lack of a record of communications between the circuit court and the jury and *the circuit court's erroneous exercise of discretion in deciding not to read to the* jury all or part of the defendant's and *victim's testimony as requested by the jury* when the jury had access to the victim's videotaped interview in

the jury room were prejudicial errors, combining "to contribute to the verdict obtained."

Majority op., ¶ 117 (emphasis added). However, as the undisputed facts show, reading the child's courtroom testimony to the jury would have been of no benefit to Anderson. If anything, Anderson benefited when the circuit court did not fulfill the jury's request to have the child's courtroom testimony read to it.

¶ 142. Notwithstanding the testimony in the record, the majority opinion repeats and repeats that failing to read the child's in-court testimony contributed to its view that it was prejudicial error not to read the child's courtroom testimony. Majority op., ¶¶ 112, 117, 119–21. The majority opinion ties this claim of error to the principle of "credibility." Majority op., ¶¶ 118–21. It implies that if the child's in-court testimony had been read to the jury during deliberations, the jury may not have believed the child. Majority op., ¶¶ 121, 123. However, there is absolutely no factual support in the record for this conclusion.

¶ 143. Just like Sergeant Joe Friday in a long forgotten television sitcom, I say look at the facts. If the child's in-court testimony had been read, it would have made the videotaped testimony even more powerful. Therefore, I conclude that if the circuit court erred, it surely was harmless error beyond a reasonable doubt.

¶ 144. The other trial testimony that the jury requested at the same time it asked to have the child's in-court testimony read was Anderson's. Again, in order to determine whether this unfulfilled request is or is not harmless error, it is necessary to examine Anderson's testimony. There is no other way to determine the potential effect it could have had if it had been read to the jury.

¶ 145. Anderson's testimony was practically void of information that would have weighed in the jury's deliberations. We quote the portions of Anderson's testimony that relate to the charge of first-degree sexual assault of a child:

Q: Okay. You've heard, Mr. Anderson, the accusations that M[] has made against you? You've been here yesterday and today?

A: Yes.

Q: And I'm going to ask you, Mr. Anderson, did you ever touch M[] in a sexual manner?

A: No.

Q: Did you ever call her out of the room— out of a room where she was watching something with her sisters—

A: No.

Q: —to have her perform oral sex on you?

A: No.

Q: Has your penis ever been in her mouth?

A: No.

Q: What color is your penis, Mr. Anderson?

A: Huh?

Q: What color is your penis?

A: Brown.

Q: Brown?

A: Yes.

Q: Any pink on it?

A: No.

As the State points out, Anderson's testimony presented only a flat denial, without elaboration, to the State's strong case. It was of such an unpersuasive nature that it would have had no effect on the jury's verdict if it had been read in the jury room.[3] There was nothing in it except Anderson's brief denial, which the jury surely knew was in his testimony because without Anderson's denial of the charges, there would have been no need for a jury trial.

¶ 146. The majority's explanation for the harm of this error relates to the jury's weighing the child's credibility and Anderson's credibility, and what the majority opinion characterizes as the undue influence of the victim's videotaped testimony where credibility was at issue. Majority op., ¶ 119. The majority opinion also asserts that the jury wanted to have the child's and Anderson's in-court testimony read to it because "the jury was obviously having difficulty sorting it all out." Majority op., ¶ 121. This is pure speculation. It is

---

[3] We list the remaining information offered in Anderson's testimony, which along with the quoted transcript text, constitutes the sum total of possible information the jury could have gained from having his testimony read to it: he and his wife were in the process of a divorce, he had a fourth grade education, he did farming work in Louisiana after leaving school, he then lived and worked in Milwaukee, he and his wife had been foster parents to three kids, his wife had confronted him about the alleged sexual assault, his wife subsequently asked him to leave the house, he then went to a cousin's house in Milwaukee, he left the cousin's house and went to Kentucky, he did not read or write well, he was arrested for these charges in Kentucky, he had not talked with the victim or her sisters about any inappropriate conduct.

equally plausible that two jury members were arguing whether Anderson fled to Kentucky or to some other state to avoid prosecution. No one knows why the jury asked to have the child's and Anderson's courtroom testimony read. However, what is clear beyond refute is that reading Anderson's and the child's in-court testimony to the jury would not have changed this verdict.

¶ 147. In my evaluation of Anderson's concerns about what testimony was, and was not, provided to the jury during its deliberations, I am persuaded that if all the testimony the jury requested had been read to it, the following factors prove beyond a reasonable doubt that, nevertheless, Anderson would have been convicted of first-degree sexual assault of a child: (1) the child's in-court testimony contained a detailed account of the sexual assault, told in words a young child would choose; (2) the child's in-court description of Anderson's ejaculation, the color of the ejaculate and what she did with it, would not be knowledge an eight-year-old child would have, absent sexual assault; (3) the child's description of the particulars of the sexual assault in the videotaped testimony was consistent with her in-court testimony; and (4) Anderson's complete lack of a substantive defense, except to say he did not do it, offered no reason why the child should not be believed. Accordingly, I conclude that if there were error in these discretionary decisions of the circuit court, any error was harmless beyond a reasonable doubt.

2. Judge's ex parte jury communications

¶ 148. The majority concludes that the circuit court judge's communications with the jury outside the presence of Anderson and counsel is prejudicial error. Majority op., ¶ 126. Although the majority contends that a record-less ex parte communication between the

judge and jury can deprive the reviewing court of the ability to assess its effect, it acknowledges that such is not always the case. Majority op., ¶ 81 n.53.

¶ 149. I agree that a judge's communication with a jury during deliberations outside the presence of the defendant and counsel is error; however, it is not structural error that requires reversal. *State v. Burton,* 112 Wis. 2d 560, 570, 334 N.W.2d 263 (1983). The majority opinion does not describe facts that it concludes show that the judge-jury communication prejudiced Anderson. Instead, it relies on the principle that what the court said in response to the jury's questions cannot be ascertained with certainty and therefore, this lack of verbatim record determines that the error was not harmless. Majority op., ¶ 118. However, this stated rationale causes the majority opinion to overrule *Burton,* which specifically concluded that ex parte communications between the circuit court and the jury are not structural errors requiring reversal:

> We continue to believe, as we said in *Havenor,* that communication between judge and jury outside the open courtroom and outside the presence of the defendant and defense counsel constitutes error, but we do not readopt the *Havenor* rule that such error constitutes automatic grounds for reversal for the same reasons that this court earlier abandoned the rule. . . . We hold that communication between a judge and a jury, while the jury is deliberating, outside the courtroom and outside the presence of the defendant and defense counsel constitutes constitutional error, if the defendant has not waived the constitutional right to be present. The court must consider whether the constitutional error is harmless beyond a reasonable doubt.

*Burton,* 112 Wis. 2d at 569–70 (citing *Chapman v. California,* 386 U.S. 18 (1967)).

¶ 150. In addition, the evidence on which the jury made its determination was so overwhelmingly in support of the State's case that it is almost impossible to ascertain what the judge could have said that would have meaningfully augmented the convincing evidence in favor of the State's case. Furthermore, the judge's on-the-record description of the communications between him and the jury demonstrate that the exchanges did not implicate the quality of the child's or Anderson's in-court testimonies. *See* majority op., ¶ 19. And, while it is beyond dispute that the circuit court should have required the bailiff to retrieve the notes between the jury and the court from the wastebasket where the jury said it had discarded them, the lack of those notes does not make the circuit court's communications with the jury prejudicial. To conclude that it does, would require us to treat this error as structural error requiring reversal, and as I have explained above, that would require overruling at least 23 years of precedent. *Burton,* 112 Wis. 2d at 570. Therefore, given the circuit court's explanation of those communications, I conclude that the failure to make or preserve a verbatim record of statements from and to the jury was also harmless error beyond a reasonable doubt.

## II. CONCLUSION

¶ 151. When I examine those assumed errors under the standards for determining whether they were harmless, I do so based on the actual testimony from Lionel Anderson's trial for first-degree sexual assault of a child. The majority employs similar harmless error standards; however, it applies them to abstract principles, not to the concrete facts of this case. This is where we differ. I conclude that all errors, in light of the actual testimony, were harmless beyond a reasonable

doubt, irrespective of which harmless error test is employed. Accordingly, because I would affirm the court of appeals decision upholding Anderson's conviction, I respectfully dissent.

¶ 152. I am authorized to state that Justice JON P. WILCOX joins in this dissent.